16594

BREVARD v. FORTUNE *ET AL.*
(69 S. E. (2d) 355)

118

*Messrs. Murchison & West,* of Camden, for *Appellants,* cite:

*Mr. John K. deLoach,* of Camden, *for Respondents,* cites:

*Messrs. Murchison & West,* of Camden, *for Appellants, in reply,* cite:

February 19, 1952.

TAYLOR, Justice.

This action relates to a tract of land in Kershaw County containing 143 acres, more or less, and fully described in the complaint herein. This tract originally belonged to Julius Bynum, whose wife, Janie Bynum, was the grandmother of Julius Brevard, the respondent herein. Julius Bynum died prior to 1886, leaving his wife, Janie Bynum, and his son, Carter Bynum, as his heirs-at-law. Janie Bynum subsequently died leaving as her heirs-at-law her son, Carter Bynum, and two children by a former marriage, Allen Fagens and Louisa Ingram. Louisa Ingram thereafter died leaving as her heirs-at-law several children including the respondent and the appellant herein, Hettie Fortune.

Presumably all persons who might make any claim to the premises were made parties to this action; and the complaint purports to set up two causes of action, the first for the specific performance of a parol gift to the respondent of the land in question; and the second cause of action is in the nature of a bill *quia timet* to quiet the respondent's title to the land, especially with reference to any claim on the part of the appellant, Hettie Fortune, operating as a cloud on the respondent's title.

The case, however, was evidently treated in the Court below as being based solely upon the second cause of action, and will be so considered by us.

The complaint in the second cause of action alleges that after the death of Julius Bynum his son, Carter Bynum, agreed to give to the plaintiff his interest in the land in question upon the condition that the plaintiff should pay the taxes thereon; and that the plaintiff then went into possession of the premises, and "for more than forty (40) years prior to the commencement of this action has held the same openly, notoriously, continuously, hostilely, adversely and exclusively of the claims of any person or persons whomsoever and particularly the claims of the defendants or those under whom they claim."

It is further alleged that for more than forty years prior to the commencement of this action the plaintiff returned the premises for taxation in his own name, and paid the taxes thereon, "making improvements to the place, cutting and selling timber and cultivating and renting the same."

It is finally alleged that the defendant Hettie Fortune, a half sister of the plaintiff, with her family, "has lived upon the premises at the will and sufferance of plaintiff and in subordination of his title, having until recently at all times acknowledged title in plaintiff and such occupancy by her has been the occupancy of plaintiff."

The answer, after setting up what is substantially a general denial, pleads the Statute of Frauds; and affirmatively alleges that the defendant Hettie Fortune "is now nearly ninety years of age and has lived on said land for a period of forty (40) years or more as a matter of right, paying no rent, being secure in her knowledge that she had by inheritance become vested with a substantial interest in said premises."

It is further alleged as follows: "That by inheritance from Louisa Ingram, Carter Bynum and others, and by deed from Gracie Smith, Richard Ingram and Caroline Gadsen, Defendant has acquired what she is informed and believes to be the interests of all persons having a legitimate claim to said land with the result that the fee simple title to the premises is now vested in Defendant."

The cause was in due course referred by a general order of reference to I. C. Hough, Esq., as Special Referee, hereinafter referred to as the Referee, who took the testimony in the cause amounting to a considerable volume, and ultimately filed his report recommending that judgment be granted in favor of the plaintiff, Julius Brevard. The report was well prepared, carefully separating the findings of fact from the conclusions of law.

The case then came before Judge Bellinger upon exceptions to the report of the Referee, and in due time he filed his well reasoned order, dated February 18, 1949, confirming

the report of the Referee and ordering that the plaintiff be declared to be the owner in fee of the premises described in the complaint. And from this order the cause comes to this Court upon exceptions by the appellant, Hettie Fortune. It will be remembered that while the judgment in this cause was in favor of the plaintiff, who is the respondent here, against all of the defendants, Hettie Fortune is the only one of· them who appealed to this Court; and this fact must be borne in mind in consideration of the appeal.

This action was evidently treated in the Court below as a suit in equity, pure and simple. Hence we shall do so here.

There are eleven exceptions to the order of the Circuit Judge, which counsel for the appellant reduced to five questions, which are stated as follows : " ( 1 ) Is there sufficient evidence to sustain the findings that a verbal gift of the property was made to Respondent? (2) Was there an ouster by Respondent of his co-tenants? (3) Were the necessary elements of adverse possession established by Respondent? (4) Are the Defendants estopped under the facts to claim an interest in the property? (5) Was there error in admitting testimony as to the gifts of land?"

But we think all these questions may be properly considered by us, under our restatement thereof, as follows :

1. Is there sufficient competent evidence to establish a parol gift of the land to the respondent?

2. Did the respondent acquire title by adverse possession under a parol gift?

3. Did the respondent acquire title by adverse possession resulting in ouster of his co-tenants?

4. Is the principle of estoppel applicable?

Preliminary to the discussion of these questions, we think the excerpts set forth below from the Referee's report will clarify the issues before us.

We therefore quote from paragraph 3 of this report relating to matters of fact the following: "* * * Accord-

ing to the undisputed testimony, Julius Bynum and subsequently Carter Bynum, gave the property verbally to Julius Brevard as did also Janie Bynum, grandmother of Julius Brevard. It was while in Georgia that Julius Brevard was told by Carter Bynum that he could have the place if he paid the taxes, and Julius thereupon returned to Kershaw County and took possession of the premises described in the Complaint, after Allen Fagens had left it, and immediately returned the property for taxation in the office of the Auditor for Kershaw County in his own name, in 1898, and has paid taxes since in his own name, and has, since that date claimed the premises as his own."

We also quote paragraph 4 relating to findings of fact: "That Julius Brevard entered into possession of the premises in 1898 by virtue of the gift of Julius Bynum and Carter Bynum; that such possession has continued until this day; that during this period of time, he placed his sister, Hettie Fortune, upon the premises and gave her the right to occupy the house during her life time in exchange for looking after the premises for him; that Julius Brevard has paid taxes upon the premises since the commencement of his occupancy, has worked and rented the same, settled a boundary dispute, cut trees and cordwood, sold timber and cordwood, built a new house upon the premises, forced the county to pay for a road through the premises, retained all rents and profits as his own, has not recognized the claims, rights, or interest of the defendants or of anyone else and has, at all times, held himself out as the owner, using it like he wanted to, and has been recognized as the owner among the people of the community."

And we also quote from this report paragraph 5 relating to findings of law: "That as a result of the verbal gift by Carter Bynum of his interest in the premises and the subsequent acquisition by plaintiff of a one-sixty-third (1/63) interest therein as an heir at law of Louisa Ingram, plaintiff has for more than forty (40) years held the said premises

openly, hostilely, notoriously, exclusively and continuously since 1898, paying taxes thereon since said date, and has done everything required of him by law to prove complete ouster and adverse possession against any and all co-tenants in the premises and that title to the same in its entirety has ripened in him in fee simple absolute."

1. Is there sufficient competent evidence to establish a parol gift of the land to the respondent?

As the Referee correctly states, the evidence is really undisputed that there was a parol gift of the land in question to Julius Brevard, the respondent herein. The gift originated with the declaration of Julius Bynum, his step-grandfather, that the respondent should have the property when he reached the age of 21. However, sometime before the respondent became 21 Julius Bynum died, and hence his gift was never legally effective. Besides, a valid gift cannot be made to take effect *in futuro*. But after his death his son, Carter Bynum, evidently desiring to effectuate his father's wishes, expressly informed the respondent that he could have the property if he would pay the taxes, and acting under this parol gift, the respondent promptly returned the land for taxation in his own name, and has since then paid the taxes thereon, using his own funds for that purpose, according to the manifest preponderance of the evidence, beginning with the fiscal year commencing January 1, 1898; and at that time he also took full possession of the land.

While the complaint makes no reference to a gift of the land by Janie Bynum, the grandmother of the respondent, his testimony is that she also gave him the place, although his possession of the property was not related to her gift, but definitely to the gift of Carter Bynum, confirming the previous intended gift by Julius Bynum; and we shall so treat the cause, as the Court below evidently also did.

While, as above stated, the testimony in regard to the parol gift is virtually undisputed, counsel for the appellant raise the point that the testimony of the

respondent relating to communications and transactions between him and deceased persons should be excluded. But we find that the record does not support this view, because while upon the direct examination of the respondent, when objection was made under Code Section 692, he was precluded from testifying as to what the deceased Carter Bynum had told him, thereafter on more than one occasion the cross examination of the respondent elicited from him statements in detail in regard to communications made to him by the deceased persons involved herein, and there was not the slightest reservation of objection, or renewal of objection, by counsel for the appellant. It therefore follows inevitably that the testimony as adduced is competent. The established general rule requiring reservations of objection in cross examination is well stated in the recent case of *Goudelock v. Prudential Insurance Co. of America,* 219 S. C. 284, 65 S. E. (2d) 114. And it seems to us that this rule is particularly appliable with reference to Code Section 692, for the testimony thereby excluded would otherwise be competent, and therefore one relying on the statute must make sufficient and timely objections.

Besides, the testimony of Dave McCoy, a wholly disinterested witness, who happened to be present during the conversation between Carter Bynum and the respondent, is alone quite adequate to establish the parol gift of the land.

However, appellant's brief as to this question relates rather to the legal effect of a parol gift, and the case of *Knight v. Stroud,* 214 S. C. 437, 53 S. E. (2d) 72, is strongly relied upon. This case was correctly decided and still has our full approval, but we do not think it supports the appellant in any respect, but rather clarifies the law favorable to the respondent under the facts and circumstances of the instant case. In fact, a parol gift of land does not and cannot *ipso facto* transfer the title to the land, but it is well recognized that there are two methods whereby under certain conditions a parol gift may become effective. One of these, which we think is applicable here, is to the effect that

where the donee pursuant to a parol gift takes possession of the land the same may ripen into a perfect title by adverse possession for the statutory period. There is, however, another method sometimes available, and that is a decree for specific performance of a parol gift, provided there is sufficient partial performance to take the case out of the Statute of Frauds, such as, full possession thereunder and the making of permanent and valuable improvements to the property. And in the case of *Knight v. Stroud* this remedy was sought, but without success. This case was before us twice, and the opinion upon the original appeal is reported in 212 S. C. 39, 46 S. E. (2d) 169, 170, wherein it was stated that there was no allegation that the appellant "continued in possession of the tract of land for the statutory or any other particular period of time, or that her possession was hostile or adverse." And in the final appeal wherein the opinion of the Court is reported in 214 S. C. 437, 53 S. E. (2d) 72, the Court held that the donees were not in possession of the property in pursuance of a gift, but were merely sharecroppers of the alleged donor, and only inconsequential improvements had been made, and hence they were not entitled to the enforcement of the alleged gift. And it appears from this opinion that the donees' possession of the property in question did not commence before 1943, while the opinion was delivered in 1949. Hence it is quite obvious that this case does not apply to the case at bar, involving the claim of title by adverse possession for far more than the statutory period of ten years under a parol gift.

There is, however, a recent case which we think is directly applicable in many respects to the case before us, and that is the case of *Harrelson v. Reaves*, 219 S. C. 394, 65 S. E. (2d) 478, 480, wherein the law is so carefully stated and so fully considered, that no other authority on this phase of the case needs to be cited. We quote the following from the unanimous opinion therein delivered by Mr. Justice Oxner:

· "It is well established in this state that a parol gift of land may ripen into title where accompanied by actual pos-

session for the statutory period, with claim of ownership, and under such a gift the donee's possession in adverse from its inception. *Summer v. Murphy,* 2 Hill 448, 27 Am. Dec. 397; *McElwee v. Martin,* 2 Hill 496; *Golson v. Hook,* 4 Strob. 23; *Harvey v. Harvey,* 26 S. C. 608, 2 S. E. 3; *Lyles v. Fellers,* 138 S. C. 31, 136 S. E. 13, 18. The authorities elsewhere are generally to the same effect. 1 Am. Jur., Adverse Possession, Section 49; 2 C. J. S., Adverse Possession, §§ 75 and 90. In *Lyles v. Fellers, supra,* the Court said: 'A parol gift is insufficient without adverse possession for 10 years. Person taking possession of land under a parol gift and thenceforward, holding it adversely for 10 years, acquires title to the same.'

· "An entry under a parol gift of land, though permissive and friendly in the popular sense, is hostile to and adverse to the paper title in the legal sense, because there is an assertion of ownership in the occupant. The same principle was stated in one of the syllabi in *Summer v. Murphy, supra,* as follows: 'The possession of a son, under a parol gift from his father, will confer title under the statute of limitations; and although this possession was permissive, that is, by the consent of the donor, and might have been ended by him at any time before the statute ran out, yet, after that time, he cannot defeat it.' "

This brings us down to the consideration of the second question which is as follows:

2. Did the respondent acquire title by adverse possession under a parol gift?

As we have already indicated, the evidence is plenary that the respondent entered into possession of the tract of land in question under the parol gift of Carter Bynum, who was the owner at that time of a two-thirds undivided interest, and at the end of his adverse possession for as much as ten years he clearly acquired the title previously vested in Carter Bynum; and he continued in such possession for considerably more than thirty additional years.

But this litigation apparently arises out of the fact that the respondent, Julius Brevard, after he entered into possession of the premises under Carter Bynum's* gift brought thereon his half-sister, the appellant, Hettie Fortune, and permitted her to occupy, without payment of rent, the house then on the land, and subsequently the house later built thereon by him at his own expense, including money obtained from the sale of some of the timber on the premises. The respondent's testimony indicates that this arrangement was made because of his desire to aid his sister, and also because since he did not actually live on the land himself there would be someone there who might act to some extent in the nature of a caretaker; and that hence the occupancy of the appellant, Hettie Fortune, was solely as a licensee of the respondent.

The appellant in her own testimony, however, attacks the exclusive character of the respondent's possession, but her testimony in general is discounted by her admissions, for she was compelled to admit that the respondent, Julius Brevard's possession and use of the property was exclusive as to any other claimants, and as to herself was restricted to her permissive use of the house and a garden spot incident thereto, for she says:

"Ain't none of them been working this property and using it as their own for the last 40 years except Julius. He use it like he want to.

\* \* \*

"Q. Have you or your children during the time you have been on the place ever worked any of the place except a garden spot? A. No, none but this garden spot. My granddaughter had a piece on that side of the road been rent for her husband.

"Q. That was rented from Julius? A. Had it to do, couldn't rent from me."

The appellant also admitted that the respondent sold timber on the place from time to time, and she said: "Any time he want to he sell it. Timber, cord wood and all, he sell it."

It further appears from the testimony, without dispute, that the defendant Grace Ingram, sometimes referred to in the record by her married name, Grace Smith, another sister of the respondent, was generously permitted by him to add a room to the house on the premises and to live therein, without the payment of rent, which she continued to use for sometime, but left about six years before the hearing in the cause.

And there was introduced by the appellant what purports to be a letter written to Grace Smith by the respondent, Julius Brevard, as Exhibit 1; and this is strongly relied upon as supporting the appellant's cause as to adverse possession, because the letter indicates that Julius wanted to get her signature to a deed so that he might sell the timber. However, the respondent flatly denied that he ever wrote or authorized the writing of such a letter, and his testimony is corroborated by his son, Dr. C. C. Brevard, who testified in the cause. But aside from this, Grace Smith, who was a defendant in this action, testified at length, but never made the slightest reference to any such letter.

It further appears that sometime in 1946 the respondent realizing that he had no deed for the property, and perhaps contemplating making a will, made some effort towards procuring deeds from his various relatives, but without much success. He did, however, obtain two deeds, one of which was introduced and is in the record, bearing date September 23, 1946. But this deed, which was clearly voluntarily made, cannot be construed in favor of the appellant, for it contains the following paragraph: "The purpose of this deed is to perfect title in Julius Brevard to whom the premises were given verbally by Julius Bynum and who had returned the premises for taxation and paid the taxes for more than forty years."

There is another circumstance strongly supporting the respondent's evidence as to his exclusive and adverse possession, which is wholly undisputed, as appears from the

uncontradicted testimony of the director of the Kershaw County Department of Public Welfare, as follows: "I am director of the County Department of Public Welfare and have charge of the office in Camden. I am here under Subpoena and I have with me certain books and records. Hettie Fortune is one of the beneficiaries in my department. We first received an application from her in 1937 at which time she was contacted and interviewed. On the 9-15-37 she stated that the home she was living in was built by her brother on his property for Hettie to use during the remaining years of her life about 4½ years ago. On 7-5-38 it says, 'Hettie lives on a place of her brother, Julius Brevard, who gives her the house free of rent for her lifetime.' That was what she said at that time. On 5-2-44 she again was contacted and at that time said that the house was owned by her brother, Julius Brevard. She pays no rent because he built the house for her to live in during her lifetime. She is now receiving benefits from the Old Age Assistance Funds."

It should be mentioned here that while the payment of taxes by the respondent for the period of approximately 50 years is not, strictly speaking, evidence of title, we think that under the circumstances of this case it is a potent factor supporting the parol gift and adverse possession thereunder.

It so happens that in the recent case of *Harrelson v. Reaves,* 219 S. C. 394, 65 S. E. (2d) 478, 481, *supra,* there was no evidence that the donee paid the taxes. The Court, however, properly held that this was not fatal, but the opinion states: "Of course, the failure to pay taxes may be regarded as a circumstance 'that weakens a claim of ownership'. 2 C. J. S., Adverse Possession, § 178(a). Or, as stated in *Gadsden v. West Shore Investment Co.,* 99 S. C. 172, 82 S. E. 1052, 1053, the failure to pay taxes 'is evidence that no claim was made.'" It is quite true that the payment of taxes does not confer title, but we think that under the circumstances of the case before us it is quite an important factor with reference to adverse possession, and also ouster, for it shows that the respondent from the begin-

ning claimed title to the land in severalty, having returned it in his own name, and having paid the taxes thereon. *Powers v. Smith,* 80 S. C. 110, 61 S. E. 222.

3. Did the respondent acquire title by adverse possession resulting in ouster of his co-tenants?

As we have already indicated, the respondent clearly acquired in due course by adverse possession, under a parol gift, the two-thirds undivided interest of Carter Bynum, and in the meantime after he entered into possession he inherited a 1/63 undivided interest as an heir-at-law of his mother, Louisa Ingram, and the appellant, Hettie Fortune, likewise inherited a 1/63 interest therein. Hence, the respondent was then a tenant in common of the premises with certain other persons, including the appellant. Have they been ousted? The law relating to this subject was so well stated in the opinion of this Court delivered by Mr. Justice Fishburne in the case of *Wells v. Coursey,* 197 S. C. 483, 15 S. E. (2d) 752, 755, that we need cite no other case. We quote the following from this opinion:

"In order that one of several cotenants may acquire title by adverse possession as against the others, his possession must be of such an actual, open, notorious, exclusive and hostile character as to amount to an ouster of the other cotenants. While a physical ouster, or 'turning out by the heels,' as some of the judges have termed it, is not necessary in establishing title in a tenant in common by adverse possession, nevertheless an actual ouster and an exclusion of the other tenants from possession must be shown. The acts relied on to establish an ouster must be of an unequivocal nature, and so distinctly hostile to the rights of the other cotenants that the intention to disseize is clear and unmistakable.

\* \* \*

"The open, notorious, continuous, hostile and exclusive possession by one tenant in common with the use and exercise of authority incident to exclusive and adverse ownership

for a period of twenty years presumes ouster, and to acquire such possession an heir may tack his possession to that of his ancestor. *Powers v. Smith,* 80 S. C. 110, 61 S. E. 222; *Miller v. Cramer,* 48 S. C. 282, 26 S. E. 657; *Gray v. Givens,* 2 Hill Eq. 511, 11 S. C. Eq. 511; *McGee v. Hall,* 26 S. C. 179, 1 S. E. 711."

Our previous discussion of the evidence in this case is sufficient to show that the law as thus laid down is directly applicable to the case before us, and the ·following language of Judge Bellinger in his order is quite apposite and correct: "Ouster and adverse possession are issues of fact for the Referee to determine from the evidence and the conduct of the witnesses, but subject to my scrutiny of the record, I find that I am in perfect agreement with his findings of fact that plaintiff entered into possession of the entire premises in 1898 by virtue of the gift of Julius Bynum and Carter Bynum; that such possession has continued until this day; that during that period of time he placed his sister Hettie Fortune upon the premises and gave her the right to occupy the house during her life in exchange for looking after the premises for him; that the plaintiff paid taxes upon the premises in his own name during the period of his occupancy, more than 40 years; that he worked and rented the same, settled a boundary dispute involving the land in question, cut trees and cord wood, sold timber and cord wood, built a new house upon the premises, retained all rents and profits as his own, had not recognized the claims, rights or interests of the defendants or of anyone else, and at all times held himself out as the owner, using the land as he pleased, and was recognized as the owner thereof by the people of that community."

Counsel for the appellant, however, suggest that such a view is fantastic, because it in effect means that a tenant in common who does not actually live on the place may oust another tenant in common who is in the actual occupancy of a part thereof. But the occupancy of a licensee is manifestly that of the licensor. And we think the following, quoted from

the footnote in 67 C. J. S., p. 535, is sound and reasonable: " 'By actual ouster is not meant a physical eviction, but a possession attended with such circumstances as to evince a claim of exclusive right and title, and a denial of the right of the other tenants to participate in the profits.'—*Badger v. Dyer,* 77 N. W. 469, 470, 106 Iowa 715—*Burns v. Byrne,* 45 Iowa 285, 287."

The final question is as follows:

4. Is the principle of estoppel applicable?

This question relates principally to statement admittedly made by the appellant to the Kershaw County Department of Public Welfare; as to which the Referee held that "Hettie Fortune by her conduct and statements is estopped to claim any interest in the premises contrary to the interest of Julius Brevard and such statements confirm the evidence of Julius Brevard that he claimed the premises as his own."

Judge Bellinger likewise held with reference to these statements: "Also these statements indicate that she had never claimed the property as her own; that she went upon the premises in subservience of the title of plaintiff and for more than 40 years permitted him to claim the property as his own, acquiescing in his claim of title, and acknowledging his title in it. It would be unconscionable, to say the least, to permit her now to claim any title whatever in the premises."

It is earnestly contended, however, by counsel for the appellant that the principle of estoppel is not applicable, because there was no proof that the respondent was in anywise misled or deceived by these statements, even if he knew of them, which is a necessary element of equitable estoppel. The testimony to the effect that appellant expressly disclaimed any title to the premises except the right to live thereon during her lifetime for the purpose of obtaining welfare benefits tends strongly to confirm the testimony of the respondent and to contradict the testimony of the appellant on the vital issues affected thereby, as well as to impeach her credibility.

The appellant introduced in evidence, over the objection of the respondent, a document in writing dated May 27th, 1895, purporting to be a will mede by "Jinney" Bynum, signed by her mark, and witnessed by three persons, all of whom signed by their marks. This instrument was never probated, but seems to have been left in the Judge of Probate's office. The Referee admitted it as an ancient document, but obviously an unprobated will is not admissible as a muniment of title, for it can have no effect upon the title; but counsel for the appellant contend that it tends to contradict the testimony relating to a parol gift by Janie Bynum, the respondent's grandmother; but in view of the fact that, as we have already held, the respondent cannot claim under any parol gift from her, it is unnecessary for us to consider this phase of the matter.

It will be recalled, as hereinbefore stated, that the answer alleged that the appellant, Hettie Fortune, claimed title by inheritance and also by deed from three certain persons; but there was no testimony whatsoever establishing the execution of any such deed, and the same was not offered in evidence. Consequently, it is not before us and cannot be considered, notwithstanding its recordation as stated in appellant's reply brief.

We are not unmindful of the well-established rule, as stated in the recent case of *Wolfe v. Wolfe,* 215 S. C. 530, 56 S. E. (2d) 343, that this Court will not disturb concurrent factual findings of the Referee and Circuit Judge in an equity case, unless such findings are without evidence to support them or against the clear preponderance of the evidence; and this rule is fully applicable to the instant case. But our decision is not dependent upon this rule; for having carefully reviewed the entire record our conclusion is that the Referee's findings of fact, as confirmed by the Circuit Judge, are true and correct, and are fully established by the clear, convincing and unequivocal preponderance of the evidence; and likewise, that the Referee's conclusions of law, as confirmed by the Circuit Judge, are in all material respects

sound and correct. It follows therefore that all the exceptions should be overruled, and the judgment of the Circuit Court affirmed, and it is so ordered.

BAKER, C. J., and FISHBURNE, STUKES and OXNER, JJ., concur.