Jane Earle HUMPHREY and husband, Herman Humphrey; Verdis Lee Underwood and husband, W.F. Underwood; Bernette Kelley and husband, Kenneth Kelley, Movants,

v.

Kenneth Ray HARRISON, Respondent.

Supreme Court of Kentucky.

Dec. 14, 1982.

Rehearing Denied March 30, 1983.

Charles R. Geveden, Geveden & Geveden, Wickliffe, for movants.

Dwain H. Lowry, Jim L. Lindblad, Lowry & Lindblad, Paducah, for respondent.

AKER, Justice.

The Ballard Circuit Court entered a judgment notwithstanding the verdict on a jury verdict which had found Kenneth Harrison, the respondent herein, to have ownership of a one-half undivided interest in the family farm based on a parole gift and adverse

possession. The Court of Appeals determined that the jury verdict was supported by sufficient evidence and was not contrary to law and accordingly reversed the judgment notwithstanding the verdict and ordered judgment on the jury's verdict. We granted discretionary review and affirm the decision of the Court of Appeals.

After graduation from high school in 1956, Kenneth Harrison left his parents' farm in Ballard County to seek his fortune in St. Louis. Shortly thereafter, Kenneth's parents, Abe and Ruth Harrison, offered to give Kenneth one-half of the family farm, a 176-acre tract in Ballard County, if he would return hom to work the farm and care for them. On the basis of that promise, Kenneth came back home in 1957 to live with his parents and manage the farm.

In 1957, the house on the farm was destroyed by fire and a nearby six-acre tract with another house was purchased. Kenneth continued to manage the farm, which now consisted of the two tracts, and throughout divided the expenses and profits equally with his parents. The six-acre tract was held by Abe and Ruth Harrison as joint tenants with right of survivorship, while title to the 176-acre tract was held in Abe's name alone. Neither Abe nor Ruth ever executed a deed conveying any portion of the land to Kenneth. In 1974, Ruth Harrison died; Abe Harrison died in 1978.

Abe Harrison left a will, in the form of a general bequest with no property specifically identified, devising his entire estate to his five children in equal shares. Kenneth brought the present action against his four sisters, claiming an undivided one-half interest in both tracts, in addition to the interest acquired under the terms of Abe's will. Kenneth based his claim on a parole gift of an undivided one-half interest in the farm coupled with possession for fifteen years. One of the sisters, Shirley Davis, did not contest the claim and a default judgment was entered against her.

At trial, several witnesses testified that Abe and Ruth on various occasions had said they had given Kenneth half the farm to induce him to return home. Kenneth's sisters introduced evidence that Abe paid the taxes on the farm for every year since 1957, with the exception of 1966; that Abe had annually paid the insurance on the farm; and that he had continued claiming ownership of the property on his federal income tax returns and in loan applications.

The movants herein contend that an undivided interest in property cannot be acquired through adverse possession by one who previously held no interest in the property. We disagree.

■ It is the general rule that real property cannot be transferred by parole gift. However, it is well settled that where one enters the land of another under an unconditional parole gift and possesses the land under a claim of right for fifteen years, such possession will ripen into title. *Ramey v. Ramey*, Ky., 353 S.W.2d 191 (1962); *Bridwell v. McGrew*, 228 Ky. 334, 14 S.W.2d 1085 (1929).

■ Further, it is also well established that even though the donor of an entire tract of land occupies the premises jointly with the donee, that fact does not bar adverse possession where the donor does not accompany his presence by any claim or act of ownership, but disclaims ownership and admits it to be in the donee. *Layne v. Norman*, 188 Ky. 317, 221 S.W. 869 (1920); *Owsley v. Owsley*, 117 Ky. 47, 77 S.W. 397 (1903).

The movants, Kenneth's sisters, argue that because Abe, as well as Kenneth, was present and claiming title, possession remained in Abe, the donor. However, this argument ignores the nature of the ownership which Kenneth claims: he claims to be a concurrent owner. In cases of concurrent ownership, sharing of the incidents of ownership is to be expected.

■ The character of possession required to ripen a parole gift into title must be contrasted with the character of possession required when entry is made under the owner's permission. In the latter, the occupant's possession must be of such notorious character as to give notice to the owner of

the adverse holding. *Tippenhauer v. Tippenhauer,* 158 Ky. 639, 166 S.W. 225 (1914). Absent a parole gift, adverse possession of an undivided interest by one who held no prior interest would be unsupportable. The significance of the parole gift is that it constitutes sufficient notice to the donor that occupant's possession is adverse. *Ramey v. Ramey, supra.*

■ An entry under a parole gift of an undivided interest, though permissive and friendly in the popular sense, is hostile and adverse to the donor's exclusive title in the legal sense, because there is an assertion of ownership in the donee.

■ Support for the proposition that a parole gift of an undivided interest may through possession ripen into title is found in *Brevard v. Fortune,* 221 S.C. 117, 69 S.E.2d 355 (1952). In that case, the Supreme Court of South Carolina held that where a donee entered under the parole gift of a party who at the time owned an undivided two-thirds interest in the land, and possessed for the statutory period, the donee acquired the two-thirds undivided interest previously vested in the donor. Though the donor in the case at bar was at the time of the gift the exclusive owner, *Brevard* nonetheless supports the position the donee of a parole gift, though a stranger to title, may yet acquire an undivided interest through adverse possession.

Although there are no reported Kentucky cases involving acquisition of an undivided interest in this manner, there is ample support authorizing the passing of an interest coextensive with the gift. Further, our decision is consistent with the broad view expressed in past Kentucky decisions that a claimant under a parole gift need only exercise ordinary acts of ownership, of the kind to be expected of an owner under the circumstances in connection with the property claimed. *Tippenhauer v. Tippenhauer, supra.* *See also,* Ar.not., 43 A.L.R.2d 1 (1955). Kenneth occupied the land for more than twenty years, he made substantial repairs to the barns and fences, he personally incurred debts to finance the acquisition of the six acres and the expense of various

farming operations, he split profits and expenses, and he managed the farm. Though the payment of taxes and premiums by Abe could be considered evidence of a claim of exclusive ownership, there was sufficient evidence of substance to entitle the jury to believe that Abe admitted ownership of half the farm in his son.

While it may be argued that many of Kenneth's acts are as consistent with a profit-sharing tenant farmer arrangement as with joint tenancy, we must conclude that Kenneth's actions coupled with the uncontradicted evidence of an unconditional parole gift proven in a clear and convincing manner makes the quantum leap from tenant farmer to joint tenant.

Therefore, the decision of the Court of Appeals is affirmed, the judgment of the Ballard Circuit Court is reversed and this case remanded for entry of judgment consistent with this opinion.

CLAYTON, STEPHENSON and STERNBERG, JJ., concur.

PALMORE, J., dissents by separate opinion.

STEPHENS, C.J., and O'HARA, J., join in his dissent.

PALMORE, Justice, dissenting.

The reason I am unable to concur in the majority opinion is that I believe it is fundamentally impossible, under the orthodox principles of adverse possession, for a stranger to the record title to acquire an undivided interest in real property through joint possession of the property with the record titleholder.

Regardless of how the respondent's possession originated—either by parol gift or otherwise—the validity of his claim depends upon its sufficiency under the principles of adverse possession. Until such time, therefore, as his possession ripened into title his father was the true owner of the whole title and he, the respondent, was a stranger to the title.

One of the requisites of adverse possession is that it be exclusive, as against the true owner at least. "Possession that is concurrent with that of the true owner is never exclusive." *Powell on Real Property,* par. 1013[2][d] (1982).

"A possession not exclusive, but in participation with the owner or others, falls far short of that kind of adverse possession which deprives the true owner of his title ... When two persons are in possession the seisin follows the owner. Where either owned a better title than the other, the law will refer the joint occupancy to the right of such owner." *Thompson on Real Property,* Sec. 2547 (1979 Replacement by John S. Grimes).

"Where two parties are in possession of real estate, neither has the exclusive, hostile possession which is a necessary element of adverse possession." *Jemison v. Belcher,* Ala., 368 So.2d 849, 851 (1979).

"For adverse possession to be effective as a means of acquiring title, the possession of the adverse claimant must be such that the true owner is wholly excluded therefrom. Any sort of joint or common possession by the adverse claimant and the record owner prevents the possession of the one claiming adversely from the requisite quality of exclusiveness." *Dzuris v. Kucharik,* 164 Colo. 278, 434 P.2d 414, 416 (1967).

"Where property is jointly occupied, the possession of neither occupant can be deemed adverse to the rights of the other." *Moore v. Terry,* 293 Ky. 727, 170 S.W.2d 29, 31 (1943). How, then, could the occupancy of the respondent in this case be deemed to have been adverse to the exclusive title of his father?

Obviously the term "possession" applies to the land itself, as distinguished from the intangible interest called "title," which by its nature is not susceptible of physical possession. There is no way for one person to be in the exclusive possession of a piece of land if he is sharing it with someone else. I concede that two or more people could jointly exercise exclusive possession as against another, and that in such a case each would acquire an undivided half interest, but their collective possession would be "exclusive" with respect to the owner. I realize also that under the theory that an adverse possessor's title may be limited to the quantum of estate or title he claims, he could acquire an undivided interest. It is recognized, for example, that the title of an adverse possessor claiming only a life estate will be limited to a life estate. Consistent with the same principle, presumably, an adverse possessor claiming a half ownership would acquire no more than that, but in order to acquire any quantum of title at all he would have to maintain exclusive *possession* of the premises.

*Brevard v. Fortune,* 221 S.C. 117, 69 S.E.2d 355 (1952), is cited as an example in which an adverse possessor acquired a ⅔ undivided interest. For two reasons, however, it does not support the majority opinion here in any respect. The first is that although Brevard's possession originated in a parol gift from the owner of a ⅔ undivided interest, it ripened into an exclusive title against all of the true owners. In other words, by his adverse possession he acquired not only the ⅔ interest of one owner but at the same time the ⅓ interest of the remaining owners as well. The case does not stand for the proposition that an adverse possessor can acquire an undivided interest while the other undivided interests remain in the true owners.

The second material respect in which *Brevard* differs from this case is that Brevard had exclusive possession of the property. He did not share possession with anyone else, whereas in this case the respondent shared it with the record titleholder, his father.

I submit that the majority opinion makes unsound law.

STEPHENS, C.J., and O'HARA, J., concur.