McGEE v. HALL.

1. The intention of a will, as disclosed by the language used and interpreted according to the rules of law, must govern its construction.
2. A testator devised lands to his three sons, A., B., and C., "to be divided equally between them in value, the issue of any of my sons who may be dead to take the share of the parent, and if either of them should die without issue at his death, then his or their shares in said land to go to the surviving brothers or their issue as above." The division was made between them, then A. died without issue, and

afterwards B. died without issue. *Held*, that on the death of A. his portion vested absolutely in B. and C., and on the death of B. his moiety in A.'s portion passed to his heirs at law and not to his surviving brother C.

3. The word "above" in this devise refers to the clause preceding the one in which it is used.

4. The exclusive receipt and appropriation of rents and profits by one tenant in common do not constitute an ouster of the co-tenants, nor will ouster be presumed short of twenty years' possession.

5. The possession of one co-tenant is the possession of all; and therefore the minority of some of them, which prevents the statute of limitations from running against an ouster, protects them all.

6. Parties failing through ignorance to assert their rights, and doing nothing to mislead or induce action, several of them being minors, are not estopped from afterwards claiming their interests.

7. The statute of limitations not availing the defendant in his legal defence of exclusive title, the Court of Equity cannot hold the plaintiffs barred by *laches* from demanding partition.

Before WITHERSPOON, J., Anderson, February, 1886.

Upon the return of this case to the Circuit Court under the order of this court (23 *S. C.*, 388), a jury trial of the legal issue raised by defendant was waived, and the cause was heard by the Circuit Judge without a jury, on the pleadings and testimony taken and reported by the master. The opinion states the case.

*Messrs. Murray, Breazeale & Murray*, for appellant.

*Mr. A. T. Broyles*, contra.

February 28, 1887. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. David Hall died testate in 1860. In the 3rd clause of his will he devised two tracts of land containing seven hundred and eighty-four acres, more or less, to his three youngest sons, Absalom J. Hall, John M. Hall, and William C. Hall, as follows, to wit: "To be divided equally between them in value, the issue of any of my sons who may be dead to take the share of the parent, and if either of them should die without issue at his death, then his or their shares in said land to go to the surviving brothers or their issue as above." Shortly after the death of the testator the land was surveyed and

divided, three hundred and forty acres being allotted to Wm. C.; two hundred and twelve to John M.; and three hundred and thirteen to Absalom J. Wm. C. was killed in battle in 1863, being intestate and unmarried; whereupon his 340 acres went, under the limitations in the will, to his two surviving brothers, John and Absalom; and soon after this, and during the same year (1863), John died also intestate and unmarried, leaving Absalom the sole surviving brother, who took possession of the entire land, including the half of the 340 acres which accrued to John on the death of William. Absalom sold the half of the 340 acres which had accrued to him on the death of William to a third party, but retained the other half upon the death of John, until in 1871, when he mortgaged it to one O. H. P. Fant. This mortgage was foreclosed in 1879, and the land was sold under the foreclosure judgment to Mrs. E. C. Bell, who conveyed the same to the defendant, Lemuel Hall.

The plaintiffs and the defendants, except Lemuel Hall, are the heirs at law of John M. Hall, and they brought the action below to have the 175 acres accrued to John from William partitioned between them, claiming that John had an absolute estate therein under the will of his father. The defendant, Lemuel Hall, resisted the partition, first, on the ground that the accrued interest was governed by the limitations attached to the original share, and therefore the plaintiffs had no title. Second, he interposed the statute of limitations. Third, he invoked the doctrine of estoppel. And lastly, he claimed that plaintiffs were barred by *laches.* His honor, I. D. Witherspoon, sustained the construction of the will claimed by the plaintiffs, and overruled all of the other defences set up by Lemuel Hall, and referred the case to the master, to have the land partitioned according to the interests of the parties, allowing Lemuel to have the share of Absalom therein, as an heir at law of John M. The appeal renews here the questions raised before the Circuit Judge, to wit, the proper construction of the will as to the accrued share, 175½ acres, of John in the original share of William. 2nd. The statute of limitations. 3rd. The estoppel. And 4th. *Laches.*

As was said by the Circuit Judge, intention should always govern in the construction of wills, for the reason that one who

has become possessed of property during his life by his industry, labor, or otherwise, has the right to dispose of it after his death as he sees proper. This is one of the fundamental rights of the citizen, and one which the courts will always protect. This intention, however, must be reached by the application of those rules of construction which have been established as best adapted to evolve said intention, and by the principles which have been applied by the courts in analogous cases. Intention reached in any other way, as by considering what would be abstractly just to the parties, and what in the opinion of the court the testator ought to have done, &c., is not allowed, because such a course would often defeat the very object intended to be accomplished, to wit, the real intention of the testator.

The first and most important rule is the language of the will, what has the testator said, and what do the words used mean, interpreted according to their usual and ordinary signification? The testator here has said, "I devise the land to be divided equally in value between my three sons." There is no ambiguity about this, and had he stopped here, each of the sons would have taken an absolute indefeasible estate, the word heirs not being necessary in a devise to carry the fee. Next, "the issue of my said sons who may be dead to take the share of the parent." This is equally as unambiguous as the first provision. It simply declares that if either son shall die before his death, leaving issue, that said issue shall take an absolute estate in the share intended in the first instance for the parent. Next, if either son should "die without issue living at his death, then his share in said land to go to the surviving brothers, or their issue as above." This seems quite unambiguous also, if the plain meaning of the words is allowed to control. Having provided for the contingency of a son being dead leaving issue, and remembering the possibility of a son dying leaving no issue, he provides for that event; and how?—by directing that the share of said son should go to the surviving brothers or their issue as above. Now, this last clause is the clause which controls the accrued share. It supposes that each of the sons has taken an original share—in other words, has taken a fee in one-third in value of the land, and this clause defeats said fee, upon the contingency of said son dying leaving

no issue at his death, in which event said share is to go to the surviving brothers or to their issue, as above.

Now, how had the shares gone to the brothers or their issue, above? The term *above* refers to the clause above the one in which it is found. That clause directs the land to go to the sons absolutely, if they be alive, and if dead to their issue absolutely. It is the last clause, the one in which the term *above* is found and of which it is a part, that defeats the fee already given upon the contingency of a son dying leaving no issue, dying after he has obtained the fee. Under this last clause, in the event that a brother died, after the original division, leaving no issue, then his share went to the surviving brothers, or to their issue in case they were then dead, and it went to them in fee. This being so, what is to divest or defeat that fee? There are certainly no express words to that effect in the clause itself, no direction that in the event of the brothers dying after they thus became invested in fee with the accrued share of a deceased brother, that said accrued share should go to another. Nothing of the kind. Nothing is claimed as indicating such intent but the term *above*, which, as we have shown, refers entirely to the previous clause in which the original shares are disposed of.

We think the Circuit Judge construed properly the 3rd clause of the will when considered in itself, taken as a whole or examined in its separate parts, so far as the language employed shows intention. Does this construction conflict with the principles established in any of our decided cases? The appellant relies on *Lowry* v. *O'Bryan*, 4 *Rich. Eq.*, 262, and *Hill* v. *Hill*, 1 *Strob. Eq.*, 22. We suppose that these are the strongest cases in the direction contended for by appellant. At least, no others have been cited, and we have not found any other in our examination of the reports.

The case of *Lowry* v. *O'Bryan*, as it appears to us, fails to support the appellant. In fact, it does not touch the question here. It simply decides that in a bequest of personalty "to four sons, to them and their heirs forever; if either should die without issue, his part should be equally divided between the survivors," the share of the last survivor could not be defeated by his dying without issue, simply because one of the contingencies was

that it should go to the survivor, and there being no survivor of the last, there was no defeasance of his absolute estate. Two of the sons had died without issue, and their shares had been divided equally between the survivors, then William died leaving issue, and many years afterwards Charles, the last survivor, died without issue, and the administratrix of William claimed the property. The court held that she could have no higher rights than her intestate, and that his interest in the share allotted to his brother Charles depended upon two contingencies, to wit, that he, Charles, should die without issue, and that he, William, should survive him. But William had been in his grave thirty years before the death of Charles, consequently he took nothing as survivor. The question as to the accrued interest was not adjudicated or raised.

The case of *Hill* v. *Hill, supra,* is directly in support of the construction contended for by respondents, and as given by the Circuit Judge. There, personal property (slaves) had been donated to several persons, four children of the grantor, with a limitation to survivors, in the event of the death of either without issue. One died without issue and his portion was distributed among the survivors; and then a second died. It was held that the proportion of the first accruing to the second by survivorship did not go over to the remaining survivors upon the death of the second without issue, but that it became the absolute property of the second, which is the very case here. It is true that in that case Chancellor Harper said that, according to the English law, where property is given to several jointly, the property will vest in the surviving joint tenants successively, so that the whole may become vested in the last survivor. But that doctrine cannot apply here, because it is evident that the testator did not contemplate a joint tenancy. It is true, he gave the land in bulk, but he directed an equal division in value, one share each to go to his sons in severalty, which division was made at once, and each son at their death was in possession of his allotted share.

We have already discussed the word *above*, and we do not think the case of *Merideth* v. *Merideth* (10 *East.,* 503) can give it the effect contended for by appellant.

The next question is the statute of limitations. Can it pro-

tect the defendant under the facts of the case? It is conceded that some of the plaintiffs are not barred, because of minority. Will the minority of these protect the others? This, too, is conceded as a general rule, but it is contended by appellants that this applies to cases of co-tenancy, but where the possession of the defendant is adverse and exclusive to all the world, the protection afforded by the statute to such claimants as may be minors cannot be extended to those who are not under such disability. The possession of one tenant in common is the possession of all as a general rule, and the possession of the one cannot defeat the rights of the others, unless there has been an ouster, at which time the statute would begin to run as to all ousted, the minority of any of these protecting the others. Here Absalom Hall was in possession after the death of his brother, John M., in 1863, until 1879, when the sale took place under the foreclosure of the mortgage which he had given in 1871 to Fant. True, he supposed he was the absolute owner, by virtue of his survivorship, but this turns out to have been a mistake, and his only right to possession was as one of the heirs at law to his brother John. This made him a tenant in common with the other heirs, plaintiffs and defendants here.

Has he, by any act of his during this possession, ousted the plaintiffs and held since adversely, long enough to interpose the statute as to these minors? If not, he cannot interpose it as to any, the shield of the minors being a shield to their co-tenants. *Lahiffe* v. *Smart*, 1 *Bail.*, 192; 1 *Nott & McC.*, 298. Was there an ouster? Ouster is generally a question of fact, or rather, whether an ouster has taken place is a question of fact, and in a decided exclusion by one of another, under a claim of right, there is no difficulty; but there is no case which has adjudged the facts necessary to ouster, so that every case may be measured thereby. It has, however, been held, that the mere possession of the land for a period short of twenty years will not presume ouster. *Gray* v. *Givens*, 2 *Hill Ch.*, 513. Chancellor Harper said in that case: "No doubt, an ouster may be presumed from the mere fact of a very long possession, as in the case of *Fishar* v. *Prosser*, *Cowper*, 217. And in a case where one tenant in common had been in possession exclusively, receiving the

rents and profits for about 40 years (double the time for the English statutes to run) Lord Mansfield instructed the jury that from the length of possession they might presume an ouster." Chancellor Harper adopted the rule of 20 years, in analogy to the principle that 20 years would generally presume almost anything to quiet titles and possession.

Even if this rule is applied, it cannot avail the defendant, because he held only some 16 years. John M. died in 1863, when Absalom took possession. The land was sold under his mortgage in 1879, when Mrs. Bell bought, from whom the defendant purchased, so that Absalom was in possession some 16 years. The only evidence, then, of ouster on the part of Absalom is 16 years' possession and the enjoyment of the rents and profits during that time, which, under *Gray* v. *Givens*, is not sufficient. It is claimed, however, that the mortgage of 1871 was an ouster, under the principle stated by Chancellor Harper in *Gray* v. *Givens, supra*, where he says : "Whatever is sufficient to give the co-tenant notice that the party in possession claims exclusively for himself, and in his own right, will, I think, be a sufficient ouster." Admit this, yet at that time several of the plaintiffs were minors, and their disability did not cease in time to allow the statute to be interposed now ; and being protected themselves, the rights of all the heirs were saved. And in any event, whether there be ouster or not, the rights of the minors were not lost, and under their wing the other heirs are protected.

Next, as to estoppel. It is hardly necessary to refer to authorities as to what constitutes an estoppel. It is sufficient to say, that we do not think the facts of this case are sufficient to enable the defendant to invoke that principle in his defence. We see nothing but acquiescence, and hardly that ; because it is clear that the parties were ignorant of their rights, many of them were minors, and they simply failed to assert or claim an interest in the land. They, however, did no positive act calculated to mislead Absalom, or which induced him to do anything to his injury.

The last defence is the alleged *laches* of the plaintiffs. *Laches* may be regarded as an equitable statute of limitations, and is applied to equity causes in analogy to legal statutes applied to cases at law. And, generally, when a party would not be barred

at law, he would not be barred in equity.   This case being orig-
inally a complaint for partition, was brought on the equity side
of the court.   The defendant, however, raised a question of title,
and an issue was ordered as to that question to a jury, and had
that issue been tried before a jury, the legal statute of limitations
would have been relied on, and the rights of the parties would
have been determined by the law governing said statute.   The
jury trial, however, seems to have been waived, and the entire
case was tried by the judge.   We have already adjudged that the
legal statute cannot avail the defendant as to the question of title,
and we see no ground for the interposition of the doctrine of
*laches* as to the partition.

It is the judgment of this court, that the judgment of the Cir-
cuit Court be affirmed.