16806

WATSON *ET AL.* v. LITTLE

(79 S. E. (2d) 384)

360

*Messrs. Leppard & Leppard,* of Chesterfield, *for Appellant,*

*Messrs. Knight & Bell,* of Chesterfield, *L. C. Wannamaker,* of *Cheraw,* and *Ney B. Steele,* of Chesterfield, *for Respondents,*

December 8, 1953.

STUKES, Justice.

The pleadings in this action make legal and equitable issues. The appeal is from the result of the trial of the legal issues and, it is said in the record, all equitable issues were reserved to be referred. Hence, the present appeal is not concerned with the equitable issues and they remain for future trial.

The action is for partition of now valuable real property which is located in the business section of the town of Cheraw extending seventy feet, more or less, in width from Market Street, on which it fronts, to Marlboro Street. It was conveyed by J. A. Watson by deed dated January 22, 1919, to his five children, including the appellant. She acquired an additional one-fifth interest in 1920 by deed from her sister for a stated consideration of $4,750.00. One of the brothers conveyed his interest to Mrs. Laura V. Thurman in 1922 for $4,500.00. Mrs. Thurman died intestate

in 1943 after thirteen or more years of invalidism and her interest passed to her son and her granddaughter, Margaret Thurman Wannamaker; the son conveyed his interest in 1950 to his sister-in-law, Nan DeLoach Thurman, who is the mother of Margaret. T. B. Watson, another of the original grantees, died intestate in 1937 after a long illness; his heirs at law are his widow, the respondent Eva R. Watson, and his children who are the respondents Carl B., Edwin R., Roderick B., T. B. Jr., and John C. Watson; the last named, the youngest, reached the age of twenty-one years on July 23, 1940. The remaining grantee in the deed of 1919, D. T. Watson, died intestate a few months after the date of the deed and his one-fifth interest thereunder descended to his widow and children; the widow died testate in 1937 and that one-fifth interest passed to the children, who are the respondents, William D. Watson and Annie W. Eustler.

The property was commonly known as "The Battery" and on the land in 1919 were a two-story brick store building and a livery stable. T. B. Watson collected the rents through the aid of a collector, Mr. Pegues, but he was sick for many years before his death in 1937 and confined to his home for the last year of his life.

After his death appellant, who was his sister, assumed charge of the property and, according to her testimony, took possession in January, 1939. She obtained the keys from Pegues and ascertained that he had in a bank in the name of The Battery something over $300.00 which she withdrew from the bank.

Meanwhile, the property had been sold in April, 1937, by the sheriff under executions for delinquent county and school taxes for several years, and was advertised in 1938 under execution for delinquent town taxes and paving assessments. All of the taxes and assessments were finally paid by appellant in installments, aggregating about $3,-000.00 (which included town taxes through 1950), and

she was delivered a deed to the premises by the County Forfeited Land Commission which had bid in the property at the sheriff's sale. The deed of the Commission to appellant was dated and recorded on December 11, 1943. Also in evidence was the deed of the sheriff to the Forfeited Land Commission which recited unpaid tax executions against "The Battery (Mrs. Lila W. Little et al.)", the defaulting taxpayer.

Appellant testified that when she took possession of the property in 1939 it was her intention, quoting, "to improve it and pay off the taxes." She also said that she considered that the other owners had abandoned it. Having been largely unoccupied for years, the building was in bad repair and appellant was first able to obtain tenants only of the living quarters, presumably upstairs. The severe business depression of that period is well known, as is its disastrous effect upon property of this type, especially in an agricultural section like the location of this. Not until the fall of 1940 was appellant able to obtain tenants in the store building, and then her sons who conducted a farm implement business; they made repairs and improvements and paid no rent. With lumber from timber cut from her land, appellant's sons constructed an additional building which she described as a "grain cleaner", but the date of this improvement does not appear in her testimony; appellant said that she had not had a settlement with her sons and could not testify as to the value or cost. In 1948 the rear end of the building was re-finished with stucco which, with other alterations, cost her $500.00. Another small building of concrete blocks for cotton seed cleaning was erected in 1949 or 1950. Bills for materials for repairs were introduced in evidence, the earliest date of any of which appears from the testimony to be 1945.

The complaint of respondents for partition and accounting for rents is usual in form and was served on October 4, 1950. The answer contains a general denial and pleas

of the statute of limitations and title by adverse possession, pleads the tax title of appellant and the provisions thereabout of Sections 2160 and 2827 of the Code of 1942. Other alleged defenses, of which there was no evidence, and those which relate to the claimed equitable rights of appellant by reason of her payment of taxes and repairs, and offset of mortgage indebtedness of one of the original cotenants to her, need not be further noticed for the purpose of this appeal and we intimate no opinion thereabout. It was expressly agreed by counsel at the trial (transcript, page 25) that it was concerned only with the claim of appellant, quoting, "to title and ownership by the statute of limitations and by the tax deed."

At the conclusion of the evidence which was taken before a jury, the court directed a verdict in favor of the respondents upon the legal issues and that the respondents and the appellant own the property in the proportions set out in the complaint, and the respondents are entitled to partition. There are numerous exceptions which appellant has reduced in the brief to five questions which will be decided without separate discussion or statement of them.

There are well-established principles applicable to cotenancy which control the controversy and require affirmance of the judgment, under the evidence adduced at the trial. A cotenant has the right, in common with his cotenants, to the possession of the property owned in common, so ordinarily the possession by one cotenant is the possession of all. The latter ceases when the exclusive possession of a cotenant becomes adverse to the right of possession by the other cotenant or cotenants; but the hostile character of the possession must be such as to amount to an ouster of the other cotenant or cotenants and must be clearly and unmistakably established by the evidence. While the possessor need not give express notice of the hostility of his possession to the other or others, the nature of it must be brought home, as it has been said, to the other owner or owners. Ouster is presumed from

possession only if it is continued for a period of twenty years. Title by ten years' adverse possession by a cotenant against another may be acqured only after actual ouster of which the latter has notice, or should have in the exercise of reasonable diligence and vigilance. Each cotenant is responsible for payment of taxes on the property, with the right of contribution from the other or others. Some of the foregoing generalizations are found in 1 Am. Jur. 819 *et seq.,* Adverse Possession, Sec. 50 *et seq.,* all are supported by the decisions of this and other courts to which reference will be made.

Only in rare cases, which may be said to be extreme, has it been held that ouster of the other cotenants was implied from exclusive possession, collection of the rents and improvement of the property by one cotenant. Examples are: *Powers v. Smith,* 80 S. C. 110, 61 S. E. 222, where the period of possession was thirty-six years; *Wells v. Coursey,* 197 S. C. 483, 15 S. E. (2d) 752, twenty-seven years; and *Brevard v. Fortune,* 221 S. C. 117, 69 S. E. (2d) 355, over forty years. Exclusive possession of sixteen years was held insufficient to imply ouster in *Gray v. Givens,* 2 Hill Eq. 511, as was the same period and enjoyment of the rents and profits in *McGee v. Hall,* 26 S. C. 179, 1 S. E. 711, 716. In the last cited it was said: "The possession of one tenant in common is the possession of all, as a general rule; and the possession of the one cannot defeat the rights of the others, unless there has been an ouster, at which time the statute would begin to run as to all ousted, the minority of any of these protecting the others." Citations may be found of practically all of our earlier relevant decisions in *Weston v. Morgan,* 162 S. C. 177, 160 S. E. 436.

The holding of *McGee v. Hall, supra,* was summarized and applied in *Stone v. Fitts,* 38 S. C. 393, 17 S. E. 136, 138, as follows: "If, as was properly held, the plaintiff and defendant were tenants in common, then it is quite clear that without proof of ouster, of which there was absolutely

none whatever, the plea of the statute of limitations could not be sustained; and it is equally clear that an ouster could not be presumed from lapse of time, as the defendant went into possession in 1875, and the 20 years from which an ouster might be presumed has not yet expired. *McGee v. Hall,* 26 S. C. 179, 1 S. E. 711."

There was no evidence to support appellant's contention of estoppel of the respondents. Applicable is the further quotation from the opinion in *McGee v. Hall, supra,* 26 S. C. at page 186, 1 S. E. at page 717: "Next, as to estoppel. It is hardly necessary to refer to authorities as to what constitutes an estoppel. It is sufficient to say that we do not think the facts of this case are sufficient to enable the defendant to invoke that principle in his defense. We see nothing but acquiescence, and hardly that, because it is clear that the parties were ignorant of their rights, many of them were minors, and they simply failed to assert or claim an interest in the land. They, however, did no positive act calculated to mislead Absolam, or which induced him to do anything to his injury."

Fitting also to the facts of this case is the following from *Whitaker v. Jeffcoat,* 128 S. C. 404, 122 S. E. 495: "His (here appellant's) only defense against the claims of his own brothers and sisters and their children is that he acquired title by adverse possession; an unconscionable claim, that the court should not sustain, except upon a clear preponderance of the evidence."

The evidence does not disclose any fact or transaction from which appellant's intention to claim the property adversely to her cotenants could have been brought home to them prior to the procurement and recordation of the tax deed to her in 1943 and the improvements which she made at her out-of-pocket expense in 1948 and subsequently. Before that the characteristics of her possession were about as of that of her cotenant-brother until his death. In other words, the requisite ouster of the co-

tenants could not reasonably be inferred from the evidence here presented except that concerning the improvements for which she paid and the procurement of the tax deed, and they were well within the ten-year period of the statute of limitations. The authorities are uniform that the statute must operate prospectively from the time of ouster, whence forward the possession of the claiming cotenant must conform to the requirements of adverse possession in order to ripen title in him. Absent the time element, as here, there need be no further consideration of the nature of appellant's possession.

Our above-stated view of the evidence has obviated the necessity for consideration of the effect of the infancy of some of the cotenants at the time appellant went into possession, one of whom did not attain his majority until July 23, 1940. The suggested acts of ouster occurred thereafter and, of course, within ten years of the commencement of the action. Incidentally also, because unnecessary, it may be mentioned that some of the respondents testified that they did not know of their ownership of undivided interests in the property until 1950—shortly before the action was brought.

Appellant's contentions which are based solely upon the tax deed are patently untenable. The special statutes with respect thereto, which were Sections 2160 and 2827 of the Code of 1942 relate to defects and irregularities in tax deeds and the proceedings antecedent thereto. *Leysath v. Leysath,* 209 S. C. 342, 40 S. E. (2d) 233; *Walker v. Williams,* 212 S. C. 32, 46 S. E. (2d) 249. The latter need not be examined in this case, because granting the validity of the tax deed for other purposes it will not bar the claims of appellant's cotenants under the applicable principles which have been stated. The decisions cited by appellant to this point have been carefully considered and none of them is pertinent simply because none was concerned with a claim of title by a cotenant which was founded upon a tax deed.

Payment of taxes by a cotenant ordinarily entitles him only to proportionate contribution from the other cotenant or cotenants, as said above. 14 Am. Jur. 123, Cotenancy, Sec. 54. *Cocks v. Simmons,* 55 Ark. 104, 17 S. W. 594, 29 Am. St. Rep. 28, cited with approval in *Johns v. Scobie,* 1939, 12 Cal. (2d) 618, 86 P. (2d), 820, 121 A. L. R. 1404. For variations of the rule as stated and its partial inapplicability in some situations see annotation in 48 A. L. R. 586. It is said in 1 Am. Jur. 826, Sec. 55, as follows, which is further than we need go in this case because, solely for the purpose of this decision, the tax deed has been deemed to have constituted evidence of ouster of respondents: "Putting a tax deed for the whole tract on record is no ouster of a cotenant unless he knew of the adverse claim, and this is true even though the claimant enters under such a deed and exercises certain acts of ownership."

Affirmed.

BAKER, C. J., and TAYLOR and OXNER, JJ., concur.