21790

Mack FELDER, Appellant, v. Billie S. FLEMING, Minnie Wells, York Mack, Rosenna Mack, Honaker Mack, Hester M. Burgess, alias Hester M. Buggas, Henry Mack, Henrietta M. Jenkinson, Sarah Huff, Unity Mack, Mancie Felder, Mary Felder, Arthur Loyd Lawrence, Abram Lawrence, Ruth Lawrence, Margaret Lawrence, Adrena Lawrence, Aleck Lawrence, Tee Felder, Bentley McNullage, Isiah Felder, Jr., Lily May Scott, Pearl Murray, Margaret McClary, Daisy Ruth Chandler, James Felder, Suzie May Robinson Jones, Rosa Robinson Mack, Corrine Robinson Jones, Lucille Robinson Collins, Preston Robinson, Inella Felder, Rosa Mae Felder, Queen Ester Felder, Josephine Felder, Dranford Felder, Dorothy Mae Felder, Luella Felder, Paul Felder, Siliah Felder, Lueanna Felder, John Doe, Representing an other unknown persons having or claiming to have any right, title or interest in and to the lands of the estate of Joseph Mack described in the Complaint herein, and Richard Roe, representing any minor, incompetent, or other person or persons under disability having or claiming to have any right, title or interest in and to said lands, Respondents.

(295 S. E. (2d) 640)

*Edward V. Atkinson,* of *Atkinson, Davis & Newman,* Sumter, *for appellant.*

*Ralph F. Cothran,* of *Cothran & Cothran,* and *Ray E. Chandler,* of *Coffey, Cooper & Chandler,* Manning, *for respondents.*

September 28, 1982.

LEWIS, Chief Justice:

Appeal is from a judgment of the lower court denying partition of a tract of land among tenants in common on the ground that one of the cotenants and his heirs had held the land adversely for over twenty (20) years so as to constitute an ouster of the other cotenants.

This is an equity matter, and the appeal is from concurrent findings by the Special Referee and the Circuit Judge. The extent of our review is accordingly governed by the well settled principle that concurrent findings of the Special Referee and Trial Judge will not be disturbed by this Court unless found to be without evidentiary support or against the clear preponderance of the evidence. *Ex Parte Guaranty Bank and Trust Company,* 255 S.C. 106, 177 S. E. (2d) 358.

The lands in issue were owned by Joseph Mack who died in 1913, leaving a will in which he devised the property to his five (5) children: York Mack, Sr., John Mack, Peter Mack, Henry Mack, and Rosa Mack Felder, as tenants in common. All of the children of Joseph Mack are deceased, with no record of any probate of their interests in the land.

Henry Mack apparently left children, but none of these children or their heirs appear as parties to this action and are not mentioned in the referee's report.

After the death of their father and prior to 1935, York, Sr., Peter, and John Mack lived on the property in their respective homes which each had constructed on separate portions of the land. Prior to 1935, John Mack died without issue; and Peter Mack moved to Buffalo, N. Y., never returning to live on the property. Peter also died without issue. Rosa Mack Felder had married and resided in a community nearby.

After Peter Mack left the property, York Mack, Sr., moved his family into one of his brother's home and began cultivating the entire tract of land. He and his descendants have occupied the land since that time and his descendants now claim absolute ownership through adverse possession. This claim was upheld by the lower court and is challenged in this appeal. We think the lower court was in error and, therefore, reverse.

York Mack, Sr., occupied and farmed the tract of land until his death in 1945. Witnesses from the community testified that they knew it as the "York Mack place." After the death of York Mack, Sr., his widow, Louvenia, and son continued to live on the land, renting portions thereof and retaining the proceeds. Later, Louvenia's daughter, Rosenna Mack, and granddaughter Joanne Nelson, lived with her. They paid all taxes on the land and retained all proceeds from its use. Some years before her death Louvenia Mack moved to Fayetteville, North Carolina. Rosenna Mack and her daughter Joanne remained on the land until fire destroyed the house in the mid 1960's, at which point they moved into Manning, South Carolina, leaving the land unoccupied.

In 1968 or 1969, Louvenia Mack and eight (8) of her children executed a deed to Society Hill AME Church purporting to convey to the church a portion of the subject lands. After Louvenia's death, eight of the York Mack children executed deeds purporting to convey a portion of the land to Billie S. Fleming who has been made a party to this action. All of the foregoing deeds recognize the existence of other heirs by reciting that one of the boundaries to the parcel sold is adjoining lands "of the heirs of Joseph Mack."

There is testimony by Joanne Nelson, granddaughter of Lovenia Mack, that she lived on the land for a number of years with her grandmother and that there would never have been any objection to plaintiff-appellant or any other heirs of Joseph Mack coming upon and using the property.

Rosa Mack Felder apparently had eight (8) children, of whom Mack Felder, the plaintiff-appellant is one. There is no testimony to show when Rosa left the property, but the indications are that she and her family resided in a nearby community on lands owned by her husband.

The referee and trial judge held that the respondents, who are lineal descendants of York Mack, Sr. (son of Joseph Mack), had been in continuous and exclusive possession of the subject land for more than thirty-seven (37) years so that ouster of the other cotenants could be presumed, thereby vesting sole title to the lands in the lineal descendents of York Mack, Sr. The lower court apparently found that the ouster took place in 1935 when York Mack, Sr., began occupying and cultivating the entire tract of land. The question to be decided is whether the foregoing findings are against the clear preponderance of the evidence.

The principles governing the resolution of conflicting claims of these cotenants to the possession and ownership of the common property are well established. The possession of one tenant in common is the possession of all and, in order for one tenant to establish title against a cotenant by adverse possession, he must overcome the strong presumption that he holds possession in recognition of the cotenancy. *Wells v. Coursey*, 197 S. C. 483, 489, 15 S. E. (2d) 752. In *Wells*, the court set forth the nature of the occupancy necessary to establish adverse possession against a cotenant as follows:

> In order that one of several cotenants may acquire title by adverse possession as against the others, his possession must be such an actual, open, notorious, exclusive and hostile character as to amount to an ouster to the other cotenants .... The acts relied on to establish an ouster must be of an unequivocal nature, and so distinctly hostile to the rights of the other cotenants that the intention to disseize is clear and unmistakable.

The record shows that York Mack occupied the land along with two of his brothers until shortly before 1935. He began his sole occupancy when one brother died and the other moved out of the State. There is no fact or circumstance to indicate that he began the occupancy of the lands in 1935 under any claim adverse to the other cotenants.

It is true that York Mack had exclusive possession of the lands from about 1935 until his death in 1945. His occupancy consisted of farming the land and collecting rents. Such however was insufficient to give rise to an implication of ouster. In *Watson v. Little*, 224 S. C. 359, 365, 79 S. E. (2d) 384, the Court stated:

> Only in rare cases, which may be said to be extreme, has it been held that ouster of the other cotenants was implied from exclusive possession, collection of rents and improvement of the property by one cotenant.

Respondents argue, however, that the attempted conveyance by the York Mack heirs of a portion of the property to the Society Hill AME Church in 1968 and 1969 and the subsequent sale of timber indicated the hostile nature of their possession. These acts occurred within ten (10) years of the institution of this action in 1975 and could not be the basis of the acquisition of title by ouster.

Apparently, respondents contend that in some way these acts in 1968 or 1969 together with the evidence of exclusive possession, could be projected back to the 1940's and 1930's so as to establish presumptive ouster at the earlier dates. This contention is without merit, since there is no evidence to show an intention to claim the property adversely to the cotenants prior to the deed to the church in 1968 or 1969. The statute of limitations must operate prospectively from the time of ouster and, since the requisite time element is absent, respondent's claim of ownership by adverse posession must fail. As in *Watson v. Little*, supra: "Absent the time element, as here, there need be no further consideration of the nature of [respondents'] possession."

Judgment is accordingly reversed and the cause remanded for further proceedings.

LITTLEJOHN, NESS, GREGORY and HARWELL, J. J., concur.