22707

Ida Mae WOODS, Respondent v. Eloise Limehouse BIVENS, et al., Defendants, of whom the Defendant Louise W. Limehouse, is Appellant, and the Defendants, Eula Mae Limehouse, Annie Mae L. Bowick, June Laverne L. Murdock, Orvelle Constance Hershey are Respondents. Appeal of Louise W. LIMEHOUSE.

(354 S. E. (2d) 909)

Supreme Court

*Thomas O. Berry, Jr.*, St. George, and *Hammer and Bernstein*, Columbia, *for appellant.*

*H. C. Prettyman*, of *Prettyman, Cordray and Abrams*, Summerville, *for respondent Ida Mae Woods.*

*Leonard L. Long, Jr.*, of *Long, Smith and Jordan*, Charleston, *for respondents Eula Mae Limehouse, Annie Mae L. Bowick, June Laverne L. Murdock and Orvelle Constance Hershey.*

Submitted Jan. 22, 1986.

Decided April 13, 1987.

*Per Curiam:*

This is an action for partition of a tract of land in Dorchester County, containing approximately 59 acres. The re-

spondent Ida Mae Woods asserts she is entitled to an undivided one-tenth interest in the property as the last surviving child of Annie E. Limehouse, who died intestate in March, 1942, leaving 10 children as her heirs. Appellant Louise W. Limehouse (the widow of N. M. Parker Limehouse, a son of Annie E. Limehouse) claims title in fee, by virtue of an instrument signed by Annie Limehouse in 1937, releasing the property to Parker Limehouse, and exclusive possession for 45 years, pleading the forty-year statute of limitations, the twenty-year presumption of grant, adverse possession and laches.

The appeal is from the order reversing the master and holding title vests in the heirs and decedents of Annie E. Limehouse. We reverse.

■    In an equity case, where the master and the circuit judge disagree as to findings of fact, we may make findings in accordance with our own view as to the preponderance of the evidence. *Townes Associates, Ltd. v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976).

The property was owned by Annie E. Limehouse and she and her son Parker lived on the premises until she moved to Summerville in 1926. In 1929, after her marriage to Parker, Louise Limehouse moved to the premises, lived there with her husband until his death in 1960. Louise Limehouse has continuously occupied and controlled the property since 1929.

In November, 1937, Annie E. Limehouse executed an instrument "releasing" this tract to her son Parker, which reads as follows:

> I, Annie E. Limehouse, release my claim on the land known as the homeplace tract, 54 acres more or less to my son Norman Milton Parker Limehouse effective on this date, November 8, 1937.
>
> [Sgd.] "Annie E. Limehouse"

This document was signed in the presence of and witnessed by three people: Earl Limehouse, Annie's son, and H. S. Hudson and J. L. Bivens, her sons-in-law. Louise and Parker Limehouse were also present. Louise and Parker accompanied Parker's mother to St. George, where the property was changed on the tax books to reflect N. M. Parker

Limehouse as owner of the property. The auditor's book bears the notation the property was "sold to N. M. Parker Limehouse in 1937."

■■ Although not complying with legal requirements for recording as a deed of conveyance, the document nevertheless constituted "color of title" under adverse possession statutes, S. C. Code Ann. Sections 15-67-210, 15-67-220, 15-67-230 (1976); *Graniteville Company v. Williams*, 209 S. C. 112, 39 S. E. (2d) 202 (1946). Louise and Parker occupied the property exclusively, claiming it as their own and openly exercising all the indicia of ownership. At the time of the death of Annie Limehouse, in March, 1942, Parker and Louise had occupied the premises under assertion of ownership for almost five years. While this occupancy was not in itself sufficient to vest title by adverse possession, it nevertheless characterizes the occupancy as "hostile." In *Harrelson v. Reaves*, 219 S. C. 394, 65 S. E. (2d) 478 (1951), involving occupancy under a *parol* gift of land, we held:

> An entry under a parol gift of land, though permissive and friendly in the popular sense, is hostile to and adverse to the paper title in the legal sense, because there is an assertion of ownership in the occupant. *Id.* at 400, 65 S. E. (2d) 478.

■ Ida Mae Woods contends that, following their mother's death in 1942, Parker's occupancy was as a tenant in common, based upon the presumption that "the possession of one tenant in common is the possession of all." *Wells v. Coursey*, 197 S. C. 483, 15 S. E. (2d) 752 (1941). This presumption is, however, rebuttable:

> This presumption is a rebuttable one, and the operation of the rule that the possession of one co-tenant is the possession of all, *ceases from the moment that such possession becomes adverse to the co-owners of the possessor.* If it appears that the party occupying the premises holds not in recognition of, but in hostility to, the rights of his co-tenants, his possession ceases to amount to constructive possession by them, becomes adverse, and if maintained for the twenty-year period, or for the

period provided for by the statute of limitations, will vest in the possessor a sole title by adverse possession to the premises.

\* \* \* \* \* \*

The open, notorious, continuous, hostile and exclusive possession by one tenant in common with the use and exercise of authority incident to exclusive and adverse ownership for a period of twenty years *presumes ouster*, and to acquire such possession an heir may tack his possession to that of his ancestor. *Id.* at 489-490, 15 S. E. (2d) 752 (citations omitted) (emphasis added).

In *Brevard v. Fortune*, 221 S. C. 117, 69 S. E. (2d) 355 (1952), under facts closely paralleling the instant case, we found sufficient proof of ouster:

By actual ouster is not meant a physical eviction, but a possession attended with such circumstances as to evince a claim of exclusive right and title and a denial of the right of the other tenants to participate in the profits. *Id.* at 133, 69 S. E. (2d) 355 (citations omitted).

There is no evidence the nature and character of Parker's occupancy, hostile and adverse in the legal sense from its inception, changed after the death of his mother in 1942. On the contrary, Parker Limehouse continued to exercise all rights of ownership until his death in 1960, a period of twenty-three years from the time he first claimed ownership. He farmed the land as he saw fit, remodeled the home, made improvements, sold timber, maintained fences, built permanent structures, barns and garages, insured the property in his name, collected crop allotments from the Department of Agriculture, and paid the property taxes. Parker owned two tracts contiguous to this tract and carried on his farming operations and the sale and cutting of timber on the entire tract as a whole. It was common knowledge in the community that this was "the Parker Limehouse place."[1]

---

[1] "There is no doubt that title to land growing out of long-continued possession — long enough to presume a grant, deed or other muniment of title — attaches at the beginning of possession on the presumption of law that a deed was executed at that time which has since been lost." *Adams v. Adams*, 220 S. C. 131, 137-138, 66 S. E. (2d) 809 (1951). (citations omitted).

Following Parker's death in 1960, his widow, Louise, continued to farm the property, retained all of the income therefrom, leased the entire acreage as well as the tobacco allotments, and paid the taxes. She was in sole control and possession of the premises under a claim of ownership at the time of the commencement of this action in 1983.

The Dorchester County auditor's records show the property was listed in the name of Norman Parker Limehouse, from 1937 through 1961, and thereafter, in the name of "estate of or the heirs of N. M. Parker Limehouse, c/o Louise W. Limehouse" through 1983. Similarly, the tax records show property taxes were assessed in the name of Annie E. Limehouse through 1936, in the name of N. M. Parker Limehouse from 1961 through 1981, and in Louise W. Limehouse in 1982.

Particularly significant on the question of ouster is the absence of proof that any claim of ownership was ever asserted by any of Ida Mae Wood's eight brothers and sisters, or by their heirs, many of whom lived in the vicinity, at any time before the commencement of this action. None of the probate court records of the estates of Ida Mae's brothers and sisters (other than Parker) disclose any claim to an interest in this property.

Upon Parker's death in 1960, Louise listed the entire tract as an asset of his estate and a listing of a one-half interest was returned in her son's estate after his death in 1973. More than 20 years elapsed from the time of Louise's claim to ownership of the entire tract following her husband's death until the commencement of this action in 1983. This period is more than sufficient to vest title in Louise by adverse possession and presumption of grant.

Failure to make a claim or to seek an accounting for a period of more than twenty years is a significant factor in barring the rights of the owner, under the twenty-year presumption of grant and presumption of ouster. *May v. Jeter*, 245 S. C. 529, 141 S. E. (2d) 655 (1965).

> In action by tenants in common or any others, claimants to land, for 20 years in the face of notorious and exclusive possession, with the use and exercise of authority incident to exclusive and adverse ownership, is sufficient to rebut the presumption that possession is in

subordination to the legal title, and to establish the presumption of a grant or deed, and almost any other presumption necessary to the protection of the possession. *Id.* at 539, 141 S. E. (2d) 655 (citations omitted).

Nothing in this record rebuts these presumptions. The actions and conduct of Louise and her late husband for a period of 45 years were "of an unequivocal nature, and so distinctly hostile to the rights of other co-tenants that the intention to disseize is clear and unmistakable." *Wells v. Coursey,* 197 S. C. at 489, 15 S. E. (2d) 752.

We hold title in fee vested in Louise under the forty-year lapse statute, S. C. Code Annot. Section 15-3-380; the twenty-year presumption of grant; and adverse possession, Sections 15-67-210 (1976). It is unnecessary to address the doctrine of laches.

The judgment of the trial court is,

Reversed.

CHANDLER, J., not participating.