581 S.E.2d 853

Sherwood N. FENDER, Respondent,

v.

HEIRS AT LAW OF Roger SMASHUM, John Smashum and Arthur Smashum, if living or such heirs of them as may be living, Carolee H. Goodwine, Mae Olive Henderson, Audrey Polite Sawyer, Diana Cornish, Heirs of John Frasier, if living or such heirs of them as may be living, Bernadette Anderson, Eloise Gadson and all other persons unknown, having or claiming any right, title or estate or interest in or lien upon the real property described in the complaint herein, being designated collectively as John Doe and Sarah Roe, including all minors, persons in the armed forces, insane persons and all other persons under any other disability who might have or claim to have any right, title or interest in or lien upon the real property described in the complaint herein, Defendants,

Of whom Henrietta Jones, Sarah Shepard and Lucy Smith, as heirs at law of John Smashum, and Queen Smashum, as grantee of Adam Smashum, heir at law of John Smashum, are Appellants.

No. 3639.

Court of Appeals of South Carolina.

Heard March 11, 2003.

Decided May 5, 2003.

Rehearing Denied June 26, 2003.

506

---

Derek C. Gilbert, of Beaufort, for Appellants.

Alysoun Meree Eversole, of Beaufort, for Respondent.

CURETON, J.:

Henrietta Jones, Sarah Shepard and Lucy Smith, as heirs of John Smashum, and Queen Smashum, as grantee of Adam Smashum, heir of John Smashum (collectively "Heirs"), appeal the circuit court's grant of summary judgment to Sherwood N. Fender in this quiet title action. We reverse and remand.

## FACTS

The parties each claim title to a parcel of unimproved land. Each can trace their titles through a series of intestate and deed conveyances to two "Head of Family Land Certificates" granted by the United States District Tax Commission to Roger Smashum around 1867. Roger Smashum's interest eventually passed through intestacy to his son John Smashum and eventually to two of his grandsons, Arthur Smashum and Thomas Smashum.

Fender claims title through a November 1988 deed derived from a succession of conveyances from Arthur Smashum. In 1966, Arthur Smashum conveyed his interest in the property to Betty M. Sloan by quit-claim deed. Sloan conveyed the property back to Arthur in 1969 by quit-claim deed. In 1983, Arthur conveyed the property to himself and Charlie Mae Brantley as joint tenants with the right of survivorship. Arthur died in 1984 and in 1988 Charlie Mae conveyed the

property to W. Thomas Parker and Fender by warranty deed.[1]

Henrietta Jones, Sarah Shepard and Lucy Smith, claim a tenancy-in-common with Fender as heirs of Thomas Smashum. Queen Smashum claims a one-eighth tenancy in common interest with Fender through a 1999 quit-claim deed from Adam Smashum, an heir of Thomas Smashum.

In December 1999, Fender initiated the present action seeking to quiet title to the property. He asserted the absence of estate or administrative proceedings related to the estates of Roger Smashum, John Smashum, and Arthur Smashum left a cloud over his title. In his complaint, Fender alleges the interest of a business associate and his was adverse to all others. His complaint states:

> That possession of the property which is the subject of this cause of action has been in actual, open, notorious and exclusive possession of [Fender and a business associate] under claim of title and that there has been such continued occupation and possession of the premises for over ten (10) years.

Queen Smashum answered on behalf of herself and the heirs of Thomas Smashum in May 2000, and counterclaimed to quiet title to the property in the name of the Heirs. The Heirs claimed Queen Smashum, Henrietta Jones, Sarah Shepard, and Lucy Smith each owned an undivided one-eighth interest in the property.

In June 2001, Fender made a motion for summary judgment. The circuit court conducted a hearing on Fender's motion the following month. In its order issued in August 2000, the court granted summary judgment to Fender. This appeal follows.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fleming v. Rose*, 350 S.C.

---

1. In February 1990, Parker and Fender conveyed their interests to Fender, Parker–Matthews Investors, Inc., and Mary Hudson Feltner. Feltner conveyed her interest to Fender in 1993.

488, 493, 567 S.E.2d 857, 860 (2002). When determining whether any triable issue of fact exists, the evidence and all inferences, which can reasonably be drawn from it, must be viewed in the light most favorable to the nonmoving party. *Faile v. S.C. Dep't of Juvenile Justice,* 350 S.C. 315, 324, 566 S.E.2d 536, 540 (2002). If triable issues exist, those issues must be submitted to the jury. *Young v. S.C. Dep't of Corrections,* 333 S.C. 714, 718, 511 S.E.2d 413, 415 (Ct.App. 1999). Even where no dispute as to evidentiary facts exists, but only as to the conclusions or inferences to be drawn from them, summary judgment should not be granted. *Hall v. Fedor,* 349 S.C. 169, 173–74, 561 S.E.2d 654, 656 (Ct.App. 2002). Moreover, summary judgment is a drastic remedy that should be cautiously invoked to ensure no person is improperly deprived of a trial of disputed factual issues. *Lanham v. Blue Cross & Blue Shield of S.C.,* 349 S.C. 356, 363, 563 S.E.2d 331, 334 (2002).

## LAW/ANALYSIS

The Heirs argue the circuit court erred in finding Fender acquired title to the subject property through adverse possession. We agree.

As an initial matter, the Heirs assert the circuit court erred in failing to find that they are co-tenants in the subject property with Fender. The Heirs cite 86 C.J.S. *Tenancy In Common* § 8 (1997) for the proposition that upon the intestate death of John Smashum and his wife, his two surviving children, Arthur Smashum and Thomas Smashum owned the property as tenants in common. They further argue that any grantees of Arthur necessarily owned a proportional interest in the property as tenants in common with them as heirs of Thomas Smashum. While acknowledging that Arthur and Thomas were cotenants, Fender asserts the cotenancy came to an end when Arthur conveyed the property to a stranger, reacquired title to the property, and thereafter conveyed the property by warranty deed to himself and Charlie Mae Brantley.[2] He further refers to the deposition testimony of Queen

---

2. Fender cites 20 Am.Jur.2d *Cotenancy and Joint Ownership,* Section 31 for the proposition that "a tenancy in common will come to an end upon forfeiture or abandonment of the common property, upon its

Smashum that prior to the death of Arthur Smashum in 1985, she obtained permission from him for her and her husband Adam to plant a garden on the property.

As stated in the case of *Andrews v. McDade*, 201 S.C. 24, 28–29, 21 S.E.2d 202, 204 (1942):

As to real property, the general rule is that where the state has passed a perfect legal title, the doctrine of abandonment is not applicable thereto, and that the title vested in the grantee cannot be affected or transferred by his act in departing from the land and leaving it unoccupied, or otherwise ceasing to exercise dominion over it. . . .

At common law, while an incorporeal hereditament may be lost by abandonment, the principle is firmly established that perfect legal title to a corporeal hereditament cannot be abandoned, or lost by abandonment, operating alone, and dissociated from other acts or circumstances; and so it is frequently said that so far as land is concerned, there can be an abandonment only in a case where the title is imperfect, or less than absolute. The doctrine of abandonment has, therefore, no application to a fee simple; but inchoate rights and equitable rights in land may be abandoned, and so may mere possessory rights, and rights acquired by user. . . .

Although technically a fee simple title holder may not by nonuse abandon his title, his nonuse and failure to assert his title to the property may constitute an important circumstance in a determination of whether another has held the property adversely to the title holder. As clarified at oral argument, Fender does not claim he ousted the Heirs, but rather claims his predecessors in title ousted the Heirs. Thus, he reasons he is not a cotenant with the Heirs and thus need only prove adverse possession for ten years prior to the date of the commencement of this action. We first examine whether Fender's predecessors in title ousted the Heirs.

"Ouster" is the actual turning out or keeping excluded a party entitled to possession of any real property. *Grant v. Grant*, 288 S.C. 86, 340 S.E.2d 791 (Ct.App.1986). . . . Actual ouster of a tenant in common by a cotenant in possession occurs when the possession is attended with such circum-

conveyance, voluntary or otherwise, to a stranger, or upon the definite ouster by the cotenant of his fellows."

stances as to evince a claim of exclusive right and title and a denial of the right of the other tenants to participate in the profits. *Woods v. Bivens,* 292 S.C. 76, 354 S.E.2d 909 (1987); *Brevard v. Fortune,* 221 S.C. 117, 69 S.E.2d 355 (1952). The acts relied upon to establish an ouster must be of an unequivocal nature, and so distinctly hostile to the rights of the other cotenants that the intention to disseize is clear and unmistakable. *Felder* [*v. Fleming*], 278 S.C. [327] at 330, 295 S.E.2d [640] at 642 [(1982)]. Only in rare, extreme cases will the ouster by one cotenant of other cotenants be implied from exclusive possession and dealings with the property, such as collection of rents and improvement of the property. *Id.,* 278 S.C. at 331, 295 S.E.2d at 642.

*Freeman v. Freeman,* 323 S.C. 95, 99–100, 473 S.E.2d 467, 470 (Ct.App.1996). "Ouster is presumed from possession only if it is continued for a period of twenty years. Title by ten years' adverse possession by a cotenant against another may be acquired only after actual ouster of which the latter has notice, or should have in the exercise of a reasonable diligence and vigilance." *Watson v. Little,* 224 S.C. 359, 364, 79 S.E.2d 384, 387 (1953).

We conclude the conveyance from Arthur to Betty Sloan by quit-claim deed in 1966; the reconveyance by Sloan to Arthur in 1969; the conveyance to himself and Charlie Mae Brantley as joint tenants in 1983, and the conveyance by Brantley[3] to Fender and W. Thomas Parker by a purported warranty deed in 1988, together with the fact Queen Smashum obtained Arthur's permission to plant a garden on the property are insufficient by themselves to establish that the Heirs were ousted. "In the absence of authorization or ratification, any attempted conveyance of the common property by one cotenant is not binding upon his cotenants, and operates to pass title to nothing more than the seller's own interest." 20 Am.Jur.2d *Cotenancy and Joint Ownership* § 106 (1995). We recognize that these conveyances are some evidence of ouster and should not be ignored[4] for possession under such deeds

---

3. Arthur died in 1985.

4. These conveyances arguably constitute color of title under our adverse possession statutes. *Woods v. Bivens,* 292 S.C. 76, 78–79, 354 S.E.2d 909, 911 (1987).

and the assertion of exclusive and unequivocal ownership in time could ripen into title by adverse possession. Nevertheless, Arthur did not enter into possession under such a deed. Moreover, his transfer to Betty Sloan in 1966 and her reconveyance to him in 1969 were by quit-claim deeds which gives rise to the inference Arthur realized he may have had less than a good legal title.[5] In addition, we find that Fender did not present evidence regarding the character of Arthur's possession or that Arthur took actions to exclude the Heirs from the property or asserted exclusive ownership over the land. Likewise, there is no evidence of the character of Charlie Mae's possession of the property.

We conclude, therefore, that a question of fact exists whether Fender established the Heirs were ousted of their interest in the property by Arthur or Charlie Mae. We further conclude that under the posture of the record in this case, Fender and the Heirs are co-tenants in the property. Therefore, Fender must show that his actions toward the property amounted to an ouster of the Heirs before he can establish title by adverse possession.

> There are well-established principles applicable to cotenancy, which control the controversy.... A cotenant has the right, in common with his cotenants, to the possession of the property owned in common, so ordinarily the possession by one cotenant is the possession of all. The latter ceases when the exclusive possession of a cotenant becomes adverse to the right of possession by the other cotenant or cotenants; but the hostile character of the possession must be such as to amount to an ouster of the other cotenant or cotenants and must be clearly and unmistakably established by the evidence. While the possessor need not give express notice of the hostility of his possession to the other or others, the nature of it must be brought home, as it has been said, to the other owner or owners.

*Watson,* 224 S.C. at 365, 79 S.E.2d at 387. One claiming title to land by adverse possession has the burden of proving adverse possession by clear and convincing evidence. *Lusk v. Callaham,* 287 S.C. 459, 460, 339 S.E.2d 156, 157 (Ct.App. 1986).

---

5. According to Fender, he had actual notice of these deeds.

The circuit court makes no reference to ouster in its order, but analyzes Fender's claim of title based solely on an adverse possession analysis. In fact, as we understand Fender's claim, he does not claim title to the property pursuant to ouster of the heirs, but rather based solely on adverse possession. Inasmuch as ouster is a prerequisite to a cotenant claiming title by adverse possession, we will analyze Fender's evidence to determine whether a question of fact exists as to whether Fender met this prerequisite.

The circuit court found the ten-year statutory period began with the November 14, 1988 deed to Fender and Parker, and ended in November 1998. In finding adverse possession, the court relied on: 1) the receipt by Fender of a warranty deed dated November 14, 1988; 2) the paying of property taxes for the statutory period of ten years; 3) the assertion of title by the giving and receiving of fractional interests through successive conveyances by warranty deeds during the statutory period; and 4) the erection of no trespassing signs on the property during the statutory period. The trial court also presumed Adam and Queen Smashum's previous use of the property was merely permissive, based on Queen's statement that Arthur gave her "the privilege" to plant a garden on the property before his 1984 death. While Fender's affidavit states he and his co-owner "exercised ownership rights ... by tending and maintaining the property," the affidavit does not indicate how, nor does the circuit court place any significance to this statement.

We find the actions cited by the circuit court do not as a matter of law establish ouster and consequently do not show Fender obtained title to the property by adverse possession. Fender's proof is not clear and unequivocal that he exercised "hostile, open, actual, notorious and exclusive" possession of the tract throughout the ten-year period. The fact that Fender placed "No Trespassing" signs on the property, without more, cannot be shown to be adverse to the rights of the other co-tenants. Especially in the light of the deposition testimony of Queen Smashum that she visited the property in recent years and did not see the "No Trespassing" signs allegedly posted by Fender. *See Felder v. Fleming,* 278 S.C. 327, 330, 295 S.E.2d 640, 642 (1982) and *Horne v. Cox,* 237 S.C. 41, 44–45, 115 S.E.2d 513, 515 (1960) (Possession of one

tenant in common is the possession of all and, for one tenant to establish title against a cotenant by adverse possession, he must overcome the strong presumption that he holds possession in recognition of the cotenancy.) In addition, the fact that Fender paid the taxes does not constitute ouster. *See Watson*, 224 S.C. at 368, 79 S.E.2d at 387 (payment of taxes by a cotenant ordinarily entitles him only to a proportionate contribution from the other cotenants). The circuit court erred in finding that Fender established title by adverse possession to the subject property.

For the forgoing reasons, the circuit court's summary judgment order is reversed and the case remanded to the circuit court for proceedings consistent with this decision.

**REVERSED AND REMANDED.**[6]

STILWELL and HOWARD, JJ., concur.

---

6. Because we reverse on this issue, we do not address Smashum's other issues on appeal.