597 S.E.2d 793

Anne S. PARKER, Appellant,

v.

Winfield W. SHECUT and Marion A. Shecut, III, Respondents.

No. 25835.

Supreme Court of South Carolina.

Heard April 8, 2004.
Decided June 7, 2004.

144

William O. Pressley, Jr., Perrin, Perrin, Mann and Patterson, PA, of Spartanburg, for Appellant.

Angus Faust Carter, III, of Carter Law Firm, PA, of Orangeburg, Robert A. McKenzie, Gary H. Johnson, II, both of McDonald, McKenzie, Rubin, Miller & Lybrand, of Columbia, for Respondents.

Chief Justice TOAL:

Anne S. Parker appeals the master-in-equity's findings on remand concerning, among other things, calculation of damages for ouster and attorney's fees and interest awards. This appeal was certified from the Court of Appeals pursuant to Rule 204(b), SCACR. We affirm.

### FACTUAL/PROCEDURAL BACKGROUND

Since 1995, Anne S. Parker (Anne) and her brothers, Marion A. Shecut, III (Bo) and Winfield W. Shecut (Win), have been involved in litigation concerning property bequeathed to them by their mother. The litigation began when Anne sued her brothers, seeking to partition the estate according to the terms of their mother's will—which directed that the 1.2

million dollar estate be divided equally—rather than by the terms of a private agreement (agreement) signed by the siblings a year after their mother's death.

Under the agreement and its addendum, Win received a house in Orangeburg, several tracts of farmland, a portion of a tract of farmland known as Cope property (which included a six-acre pond), and farming equipment. Anne and Bo jointly received the remaining farmland on the Cope property (including a two-thirds share of the pond), commercial property, a residential lot, and a beach house in Edisto. To manage their jointly owned properties, Anne and Bo formed a partnership called Shecut Investments. Shortly after they formed the partnership, Anne and Bo began to disagree about how the property should be managed. As a result, Anne brought the underlying partition action, seeking to repudiate the agreement.

The master-in-equity conducted two sets of hearings. The first set of hearings centered on whether the agreement signed by the siblings was valid. After the hearing, the master issued an order dated July 10, 1997, (1) finding that the agreement was valid and ordering its specific performance; (2) ordering Anne to pay Win $30,377 in actual damages for breaching the agreement; (3) ordering Anne to pay Win's attorney's fees; and (4) dismissing the action as to Win. Anne immediately appealed, but the appeal was held in abeyance until the master ruled on the remaining issues.

The second set of hearings primarily focused on the partitioning of the properties jointly owned by Anne and Bo. In his second order, dated February 17, 1998, the master (1) partitioned all property jointly owned by Anne and Bo, excepting the Edisto beach house, which was ordered to be sold; (2) found that Bo was justified in changing the locks to the beach house when he suspected that Anne had vandalized it; (3) awarded Win $23,699.37 in attorney's fees to be paid from Anne's share of the beach-house-sale proceeds; (4) directed that Anne's and Bo's attorney's fees be paid from the beach-house-sale proceeds; and (5) awarded Bo $30,000 in actual damages, to be paid by Anne, for a lost business opportunity. Anne appealed.

The Court of Appeals (1) affirmed the master's finding that the agreement was valid; (2) affirmed the award of attorney's fees to the brothers, with Win's to be paid from Anne's share of the beach-house-sale proceeds; (3) affirmed the master's finding that Anne was not ousted or excluded from using the beach house; (4) reversed the award of $30,377 in actual damages to Win for breach of contract; (5) reversed the award of $30,000 to Bo for a lost business opportunity; and (6) remanded the issue of whether Anne maintained an interest in the Cope property pond.

Before the matter was considered on remand, this Court granted certiorari to review one issue: whether the Court of Appeals erred in finding that Anne failed to show ouster. *Parker v. Shecut*, 349 S.C. 226, 562 S.E.2d 620 (2002). This Court reversed the Court of Appeals' decision on the ouster issue and held that Bo ousted Anne from the Edisto beach house. Consequently, the case was remanded, and the lower court was instructed to (1) determine the amount of damages, if any, due Anne for ouster and (2) proceed with the sale of the beach house.

Finally, on remand, the master considered issues from this Court, the Court of Appeals, and those consented to by the parties. The following findings are relevant to the present appeal: (1) the beach house was sold for $785,000, and the proceeds are being held by the court until this appeal is resolved; (2) Bo owes Anne $16,995 in damages for ouster; (3) Anne no longer owns a portion of the pond on the Cope property; (4) Win's request for appellate attorney's fees, plus interest, is granted; (5) Anne and Bo are equally responsible for the escrow agent's fees; (6) Anne's and Bo's requests for appellate attorney's fees are denied.

Anne raises the following issues on appeal:

I.   Did the master err in his calculation of ouster damages?

II.  Did the master err in updating the escrow accounting?

III. Did the master err in finding that Anne no longer owned the pond?

IV.  Did the master err in awarding appellate attorney's fees to Win?

V.   Did the master err in awarding interest on Win's attorney's fees?

VI.  Did the master err in failing to order that money judgments for Anne be paid from the beach-house-sale proceeds?

VII. Did the master err in ordering Anne to pay half of her attorney's fees, half of Bo's attorney's fees, half of the escrow agent's fees, and half of the costs of an appraisal?

## LAW/ANALYSIS

### Standard of Review

When reviewing an equitable action, this Court may find facts in accordance with its own view of the preponderance of the evidence. *Anderson v. Anderson,* 299 S.C. 110, 113, 382 S.E.2d 897, 899 (1989).

### I.   Ouster Damages

Anne argues that the master erred in his calculation of ouster damages. She argues that the damages should have been calculated using the rental value of the beach house without adjustment for expenses. She also argues she is entitled to treble damages. We disagree with both arguments.

This Court defined "ouster" as "the actual turning out or keeping excluded a party entitled to possession of any real property." *Parker v. Shecut,* 349 S.C. 226, 230, 562 S.E.2d 620, 622 (2002) (citation omitted). "Ouster" may occur when there is "a possession attended with such circumstances as to evince a claim of exclusive right and title and a *denial of a right of the other tenants to participate in the profits.*" *Id.* (emphasis added) (citing *Woods v. Bivens,* 292 S.C. 76, 80, 354 S.E.2d 909, 912 (1987)). The ousting co-tenant "is liable as a trespasser for the rental value of the property beyond his ownership share." *Id.* at 230, 562 S.E.2d at 623 (citing *Jones v. Massey,* 14 S.C. 292, 307–08 (1880)).

In the present case, the master awarded Anne $16,995 in damages for Bo's ouster between June 13, 1997 and August 5, 2002. To calculate the damages, the master reviewed the

gross rental values of the property between 1993 and 1995, which were as follows: $8,497 (1993); $18,181 (1994); and $19,841 (1995). The master took the highest, most recent value of $19,841 and subtracted $13,222 in allowable, out-of-pocket expenses,[1] leaving an annual rental value of $6,619. As a result, Anne's one-half share of the rental value was $3,310 per year, totaling $16,995 over the five-year ouster period.

We hold that the master properly calculated the ouster damages. This Court held that Bo was liable "for the rental value of the property beyond his ownership share." *Parker*, 349 S.C. at 230, 562 S.E.2d at 623. In addition, this Court explained that "ouster" involves a denial of a right to participate in the *profits* of the property. *Id.* at 230, 562 S.E.2d at 622. Had Bo and Anne continued to maintain the beach house as a rental property, Anne would not have pocketed the gross rental value of the property; instead, as a co-tenant, Anne would have had to pay her share of the expenses. Therefore, by awarding Anne the rental value of the property less allowable expenses, the master properly calculated the ouster damages.

■ Anne also argues that she is entitled to treble damages under S.C.Code Ann. §§ 15–67–410 and 15–67–420 (1976). We disagree. These statutes apply in circumstances in which one has forcibly entered and "disseized" property. In its prior opinion, this Court held that Bo was to be treated as a trespasser, liable for the rental value of the property beyond his ownership share, not as one who has forcibly entered and "disseized" property. Therefore, these statutes do not apply to the facts in this case, and Anne is not entitled to treble damages. *See Du Pre v. Tilghman Lumber Co.*, 114 S.C. 269, 272, 103 S.E. 526, 527 (1920) (holding trespass not sufficient to sustain an action for forcible entry and detainer).

## II.  Escrow Accounting

■ Anne argues that the master erred in updating the escrow accounting by failing to include certain bartered and paid rents. We disagree.

---

1. Allowable expenses included rental commissions, utilities, cleaning services, owner repairs, agency repairs, and taxes.

Since November 12, 1997, Carole Gunter (Gunter) has been the escrow agent for the Shecut family. Her primary responsibility as the escrow agent has been to manage all Shecut properties, including collecting rents, paying taxes, and renewing insurance policies. At the hearing on remand, Gunter submitted a detailed report documenting all money received and paid during her term. The master instructed Gunter to review her accounting once again, ensuring that all rents and expenses related to property owned by Anne and Bo (as Shecut Investments) were allocated equally. Income generated and expenses incurred after the property was partitioned were to be treated individually, based on who owned the property. After reviewing the accounting as instructed, Gunter submitted a revised report to the court.

The master relied on Gunter's revised report in his decision, a decision that ultimately benefited Anne. The report showed that Bo owed Anne $5,609.77, Win owed Anne $4,694.39, and the escrow balance was $845.77. In the final calculation, Anne was awarded $18,949.44, which included the amounts owed by Bo and Win, the escrow balance, and amounts owed to Anne in the court's prior order. Of the total amount due Anne, $13,409.28 was to be paid by Bo and specifically accounted for bartered and paid rents.

Because the master's order took into consideration money due Anne for bartered and paid rents, we find that the master did not err in his final accounting.

### III. Pond

Anne argues that the master erred in finding that Anne no longer owned a share of the six-acre pond located on the Cope property. This argument is based on the fact that the master did not specifically mention the pond in his February 17, 1998 order, which simply partitioned the "Cope property." We disagree.

Originally, in their private agreement, the siblings decided that the pond would "be kept in good condition and maintained as a pond for the mutual use and enjoyment of all parties of this agreement." But in the partition action, the portion of the pond owned jointly by Anne and Bo was allotted to Bo. The Court of Appeals subsequently found that this division

deprived Anne of her agreed interest in the pond because the master relied on an incorrect property survey. Therefore, the Court of Appeals remanded the issue.

On remand, the master explained that "the value of the pond was considered by the Court when Bo and Anne partitioned the joint property under the Agreement." He cited the appraisal and testimony of Chuck Henson (Henson) as support for his decision in the partition action. Anne called Henson to testify on remand, and Henson confirmed that the value of the pond was $2,000 per acre.

Given that Henson's appraisal report was part of the record in the partition action; the master stated that he relied on this report in partitioning the "Cope property"; and the master heard testimony from Henson on remand confirming the pond's value, it is clear that the pond was fully considered in the partitioning of the jointly owned property and upon remand.

Therefore, the master properly found that Anne's interest in the pond had been allotted to Bo, she received fair value for the pond, and she no longer has an interest in or rights associated with the pond.

## IV. Win's Appellate Attorney's Fees

Anne argues that the master erred in awarding Win appellate attorney's fees because Win was no longer a party to the action after all claims against him were dismissed in the initial, July 10, 1997 order. As a result, Anne argues, the court lacked jurisdiction to decide the issue of Win's attorney's fees in the subsequent proceedings. We disagree.

When the Supreme Court remits a case to the circuit court, the circuit court "acquires jurisdiction to enforce the judgment and take any action consistent with the Supreme Court ruling." *Muller v. Myrtle Beach Golf & Yacht Club*, 313 S.C. 412, 414–15, 438 S.E.2d 248, 249 (1993). Additionally, whether respondents are entitled to appellate attorney's fees pursuant to a statute [2] is a determination for the circuit court.

---

**2.** The applicable statute in this case states: "[t]he court of common pleas may fix attorneys' fees in all partition proceedings and, as may be

*Taylor v. Medenica,* 332 S.C. 324, 326, 504 S.E.2d 590, 591 (1998).

In the present case, Win's involvement in the proceedings did not cease upon the issuance of the July 10, 1997 order. Win remained a named defendant and participant during the second set of hearings. In fact, the master specifically addressed the issue of Win's attorney's fees in the February 17, 1998 order.

Because Anne appealed the findings of both orders, Win continued to participate in the case as a named respondent whose interests could be affected by the appellate court's decision. Moreover, the Court of Appeals remanded the pond issue—a pond that was partly owned by Win—which forced Win to remain involved in the litigation on remand.

Therefore, we hold that the master properly considered the issue of Win's appellate attorney's fees, and it was within the master's discretion to award the fees accordingly.

## V.  Interest on Win's Attorney's Fees

Anne argues that the master erred in awarding post-judgment interest on Win's attorney's fees. She argues that because the fees were to be paid from the beach-house-sale proceeds, interest should not have accrued until the beach house was sold. We disagree.

S.C.Code Ann. § 34–31–20(B) (1976 as amended) provides that "[a]ll money decrees and judgments of court enrolled or entered shall draw interest according to law." A party need not plead for such interest; it is due as a matter of course. *Calhoun v. Calhoun,* 339 S.C. 96, 102, 529 S.E.2d 14, 17 (2000). An award of attorney's fees may be considered part of a monetary judgment and draw interest accordingly. *Christy v. Christy,* 317 S.C. 145, 152, 452 S.E.2d 1, 5 (Ct.App. 1994).

In the present case, Win was awarded $14,162.49 in interest. The master calculated interest due from February 17, 1998, the date that (1) the beach house was ordered to be sold, and (2) Win was awarded attorney's fees in the amount of

equitable, assess such fees against *any or all of the parties in interest."* S.C.Code Ann. § 15–61–110 (1976) (emphasis added).

$23,699.37 to be paid from Anne's share of the beach-house-sale proceeds.

Anne did not pay the fees and now claims that the interest, if any, should be calculated from August 20, 2002—the date the beach house was sold—since that is the date the proceeds became available. We disagree.

As this Court noted in its decision, nothing prevented Anne or Bo from proceeding with the sale of the beach house according to the master's instructions in the February 17, 1998 order. Further, this Court stated, "the sale should have proceeded."

Anne could have expedited the availability of the proceeds by proceeding with the beach house sale as directed, giving her the means to pay Win's attorney's fees. The awarding of attorney's fees to Win was a judgment against Anne, and she failed to take any action to abate the running of the interest. Given that the underlying case and the subsequent appeals dealt primarily with disputes between Bo and Anne, with Win having a passive role in most of the litigation, we find that it was equitable for the master to award interest on Win's attorney's fees only.

## VI.   Money Judgments for Anne

On remand, the master specifically ordered that awards payable to Bo, Win, and their respective attorneys be paid from the beach-house-sale proceeds. But the master did not specify the source of money judgments due Anne. Anne argues that her awards should also come from the proceeds of the beach house sale so that the awards will be legally enforceable. We disagree.

Anne's concern is that she will have to continue the present litigation to enforce judgments in her favor. This argument is without merit. There is no indication in the record that either Win or Bo has interfered with Anne's receipt of payments due her. The force of the judgment itself should ensure that Anne collects.

Therefore, Anne is not entitled to alter the judgment so as to provide additional assurance that she will receive the money judgments.

## VII.   Fees and Costs

The master ordered that the following fees and costs be paid from the beach-house-sale proceeds: Anne's attorney's fees, Bo's attorney's fees, the escrow agent's fees, and the cost of an appraisal.   Since the proceeds from the beach house sale are to be divided equally, the master's order essentially requires Anne to pay half of these fees and costs.   Anne argues that this was error and that Bo should be required to pay all fees and costs since "Bo's wrongdoings have put the trial court and the parties to much legal effort and increased costs."   We disagree.

As to the attorney's fees, it was within the master's discretion to order that attorney's fees be paid from the beach-house-sale proceeds and therefore be shared equally.   The record does not indicate that either party was more at fault than the other such that one party should have been required to pay the attorney's fees for both parties.   We also note that Anne actually benefited from the master's order since her attorney's fees ($13,173.80) were higher than Bo's ($7,999.00), and Bo had to pay half of Anne's attorney's fees.

As to the escrow agent's fees, the escrow agent was appointed for the benefit of all parties to the litigation, including Anne. Further, the escrow agent's responsibilities largely centered on managing the properties owned jointly by Anne and Bo.

The appraisal cost of $2,000 stems from the appraisal of one of Anne's properties.   The escrow agent ordered the appraisal to determine whether the property should be sold so that its proceeds could be deposited into the diminishing escrow account.   This was within the escrow agent's discretion, and ultimately, the decision benefited Anne: Anne owned the property that was appraised and used the appraisal report when the property was sold.

Anne has been an active participant throughout this near decade-long litigation.   Therefore, it was equitable for the master to order Anne to pay her share of the fees and costs.

## CONCLUSION

For the foregoing reasons, we AFFIRM the master-in-equity's findings.

WALLER, BURNETT, PLEICONES, JJ., and Acting Justice PAULA H. THOMAS, concur.